1  Joshua H. Reisman, Esq.
   Nevada Bar No. 7152
2  Glenn M. Machado, Esq.
   Nevada Bar No. 7802
3  REISMAN·SOROKAC
   8965 South Eastern Avenue, Suite 382
4  Las Vegas, Nevada 89123
5  Telephone: (702) 727-6258
   Facsimile: (702) 446-6756
6  Email: jreisman@rsnvlaw.com
7  Email: gmachado@rsnvlaw.com

8  *Attorneys for Plaintiffs*

9              UNITED STATES DISTRICT COURT
                   DISTRICT OF NEVADA
10

11  A. DOE, E. DOE, K. DOE, M. DOE, S. DOE,)  Case No.
    and Y. DOE,                            )
12                  Plaintiffs,            )  **MEMORANDUM OF LAW IN SUPPORT**
                                           )  **OF PLAINTIFFS' MOTION TO**
13                                         )  **COMPEL SUBPOENA COMPLIANCE**
          v.                               )
14                                         )
    KURT LUDWIGSEN, in his individual      )
15  capacity, KIRSTEN LAMBERTSON, in her   )
    individual capacity, MICHAEL G. SCALES,)
16  individually and as President of Nyack )
    College, DAVID C. JENNINGS, individually)
17  and as  Executive Vice President of Nyack)
    College, KEITH DAVIE, individually and as)
18  Athletic Director for Nyack College,   )
    AMANDA AIKENS, individually and as     )
19  Assistant Athletic Director forNyack College,)
    TAYLOR BROWN, individually and as      )
20  Assistant Softball Coach for Nyack College,)
    KAREN DAVIE, individually and as Director)
21  ofHuman Resources and Title IX Coordinator)
22  for Nyack College, NYACK COLLEGE, and  )
    DOES  1-10,                            )
23                                         )
24                  Defendants.            )
25  _____   )

26

27

28

                                1

REISMAN·SOROKAC
8965 SOUTH EASTERN AVENUE, SUITE 382
LAS VEGAS, NEVADA 89123
PHONE: (702) 727-6258 FAX: (702) 446-6756

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL SUBPOENA COMPLIANCE

Pursuant to Fed.R.Civ.P. 45, Plaintiffs hereby move this court to compel subpoena compliance by Brittany Sturtevant.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The facts and procedural history relevant to the instant motion are fully set forth in the Declaration of Todd J. Krouner, Esq., dated March 20, 2018 ("Krouner Decl."), submitted herewith and attached hereto as Exhibit "1".

First, Plaintiffs' Motion to Compel a non-party to this action, Brittany Sturtevant, a.k.a. Allie Haze ("Ms. Sturtevant"), should be granted because the subpoena *ad testificandum* and *duces tecum* issued on or about October 26, 2017 (the "Subpoena"), addressed to Ms. Sturtevant, was properly served on Ms. Sturtevant, and because the Subpoena seeks the testimony and documents that are within the scope of discovery. Second, this Court is the proper venue for enforcing the Subpoena against a non-party.

## ARGUMENT

### I.     THE COURT SHOULD COMPEL MS. STURTEVANT TO COMPLY WITH THE SUBPOENA

Rule 45 of the Federal Rules of Civil Procedure ("Rule 45") authorizes federal courts to issue subpoenas to non-parties to "compel testimony or the production of documentary evidence in an ongoing case." Estate of Ungar v. Palestinian Auth., 396 F. Supp. 2d 376, 379 (S.D.N.Y. 2005). See also Salem Vegas, L.P. v. Guanci, 2013 WL 5493126, at *1 (D. Nev. Sep. 30, 2013) (acknowledging that Rule 45 authorizes federal courts to issue subpoenas against non-parties). Subpoenas issued pursuant to this rule allow a party to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Koch v. Greenberg, 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009) (citing Fed. R. Civ. P. 26(b)(1)); Painters Joint Comm. v. Employee Painters Trust Health & Welfare Fund, 2011 WL 4573349, at *5 (D. Nev. Sep. 29,

2011) ("It is well established that the scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1).").

Under Rule 45(a)(2), "[a] subpoena must issue from the court where the action is pending." Fed.R.Civ.P. 45(a)(2). The subpoena may specify a "[p]lace of [c]ompliance" that is "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed.R.Civ.P. 45(c)(1)(a). Rule 45(d)(2)(B)(i) allows the serving party "[a]t any time, on notice to the commanded person" to "move the court for the district where compliance is required for an order compelling production or inspection."

Here, the motion to compel should be granted because the Subpoena was properly served on Ms. Sturtevant and seeks testimony and documents on topics within the scope of discovery. Additionally, Ms. Sturtevant should be compelled to produce subpoenaed documents two weeks prior to her deposition.

### A.     The Subpoena Was Properly Served And Is Valid.

In accordance with Rule 45(a), the Subpoena was issued from the United States District Court for the Southern District of New York, where this action is pending. (Krouner Decl. ¶ 5, Exhibit A.) The Subpoena satisfies the form and content requirements of Rule 45(a). On or about November 7, 2017, the Subpoena was properly served on Ms. Sturtevant in Las Vegas, Nevada. (See, Krouner Aff. ¶ 5, Exhibit B); Fed.R.Civ.P 45(b)(2); see also Probulk Carriers Limited v. Marvel, 180 F.Supp.3d 290, 292 (S.D.N.Y. 2016) (under Rule 45(b)(2), "[a] subpoena may be served at any place within the United States"); NML Capital Ltd. v. Republic of Argentina, 2014 WL 3898021, at *9 (D. Nev. August 11, 2014) ("A subpoena 'may be served at any place within the United States.'").

Ms. Sturtevant acknowledged receipt of the Subpoena on or about December 5, 2017, when Ms. Sturtevant called the Law Office of Todd J. Krouner, P.C. (Krouner Decl., ¶ 6.) The Subpoena requires Ms. Sturtevant's compliance at the Reisman Sorokac law office, located at 8965 South Eastern Avenue, Suite 382, Las Vegas, Nevada 89123, which is within 100 miles of where Mr. Sturtevant resides. See Fed. R. Civ. P. 45(c).

REISMAN·SOROKAC
8965 SOUTH EASTERN AVENUE, SUITE 382
LAS VEGAS, NEVADA 89123
PHONE: (702) 727-6258 FAX (702) 446-6756

1   Plaintiffs' made numerous attempts to reach out to Ms. Sturtevant to schedule the

2   deposition on the dates convenient for Ms. Sturtevant. (See Krouner Decl., ¶ 6-10.) To date, Ms.

3   Sturtevant has not replied. Id. ¶ 11.

4   The Subpoena was properly served and is valid. Ms. Sturtevant ignored Plaintiffs' request

5   to arrange the deposition. Consequently, the Court should compel Ms. Sturtevant to comply with

6   it.

7   **B.    The Subpoena Seeks Deposition Topics Within The Permissible Scope Of Discovery**

8   Rule 26(b) provides that a party may obtain discovery regarding "any non-privileged

9   matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). Rule 26(b) "governs

10  the scope of discovery from parties and non-parties alike." Crosby v. City of New York, 269

11  F.R.D. 267, 282 (S.D.N.Y. 2010); see also Painters Joint Comm., 2011 WL 4573349, at *5 ("It is

12  well established that the scope of discovery under a subpoena issued pursuant to Rule 45 is the

13  same as the scope of discovery allowed under Rule 26(b)(1)."); Night Hawk Ltd. v. Briarpatch

14  Ltd., LP, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (same); Salvatorie Studios Int'l v.

15  Mako's Inc., 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001) (same).

16  One of the allegations in this case is that defendant Kurt Ludwigsen brought a porn star,

17  known as Allie Haze, to meet with plaintiffs on Nyack College's campus. He later had at least two

18  plaintiffs meet with Ms. Sturtevant, in his office, after a second team meeting with her at his

19  house. (Krouner Decl., ¶ 3.) The information that Plaintiffs seek to elicit during the deposition is

20  relevant to this claim. See In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 69 (2d Cir.

21  2003) (to meet its relevance burden, a party need establish only that the subpoenaed information is

22  relevant to any claim or defense); Paws Up Ranch, LLC v. Green, 2013 WL 6184940, at *4 (D.

23  Nev. Nov. 22, 2013) (denying motion to quash a non-party subpoena because "Plaintiffs have

24  articulated several issues for which these documents [were] relevant").

25  Consequently, the Court should compel Ms. Sturtevant to comply with the Subpoena.

26  / / /

27  / / /

28  / / /

REISMAN-SOROKAC
8965 SOUTH EASTERN AVENUE, SUITE 382
LAS VEGAS, NEVADA 89123
PHONE: (702) 727-6258 FAX: (702) 446-6756

**C.   Ms. Sturtevant Should Be Compelled To Produce Requested Documents Two Weeks Prior To The Deposition.**

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena seeking the production of documents from a nonparty. A subpoena should designate with reasonable particularity the documents, things and electronically stored information that are to be produced by the party upon whom it is served. See Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2457 (3d ed.) (2017). In the present case, the Subpoena required Ms. Sturtevant to produce:

> 1.  Current copy of … *curriculum vitae* or resume.
>
> 2.  For the period of January 1, 2012, to the present, a copy of all documents concerning any communications including without limitation, letters, Facebook messages, emails, twitter messages and text messages, between [her] and: a) Kurt Ludwigsen; b) Verified Call; c) any student-athlete at Nyack College; d) any member of the press concerning Kurt Ludwigsen; and e) any other person or entity concerning Kurt Ludwigsen.
>
> 3.  A copy of all documents concerning [her] travel to New York and/or New Jersey (*i.e.* travel itineraries, rental car agreements, *etc.*) in February 2015, when [she] stayed at the residence of Kurt Ludwigsen, in Ridgewood, New Jersey (the "February 2015 Trip").
>
> 4.  A copy of all documents cornering [her] professional appointment or professional activities during the February 2015 Trip.
>
> 5.  For the period of January 1, 2012, to the present, a copy of all documents concerning [her] speaking engagements at any college and/or university other than Nyack College.
>
> 6.  For the period of January 1, 2012, to the present, a copy of all documents concerning any money paid to [her] by Kurt Ludwigsen.
>
> 7.  For the period of January 1, 2012, to the present, a copy of all documents concerning any money paid to [her] by Verified Call.
>
> 8.  For the period of January 1, 2012, to the present, a copy of all documents concerning any promotional or convention events that [she] attended at which Kurt Ludwigsen was also present.
>
> 9.  All photographs of Kurt Ludwigsen.

REISMAN·SOROKAC
8965 South Eastern Avenue, Suite 382
Las Vegas, Nevada 89123
Phone: (702) 727-6258 Fax: (702) 446-6756

10. All photographs concerning the February 2015 Trip.

(Krouner Decl., Exhibit A.)

Plaintiffs' Subpoena designates with reasonable particularity the documents, things and electronically stored information that Ms. Sturtevant was required to produce.[1] Ms. Sturtevant repeatedly failed to comply with the Subpoena. Ms. Sturtevant should be compelled to produce requested documents two weeks prior to her deposition; otherwise, Plaintiffs will be unable to adequately prepare for the deposition.

## II.     THIS COURT IS THE PROPER VENUE FOR ENFORCING THE SUBPOENA AGAINST A NON-PARTY.

Under Rule 45(a)(2), "[a] subpoena must issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). The subpoena may specify a "[p]lace of [c]ompliance" that is "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(a). Where the commanded party objects to a subpoena, Rule 45(d)(2)(B)(i) allows the serving party "[a]t any time, on notice to the commanded person" to "move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

Addressing the issue, the Eastern District of New York recently explained:

> [P]rior to the 2013 amendments to Rule 45, a subpoena duces tecum was required to be issued "from the court for the district where the production or inspection is to be made," Fed. R. Civ. P. 45(a)(2) (2007), rather than from the court where the action was pending. The prior version of Rule 45 also specified that "the serving party may move the issuing court for an order compelling production or inspection." Fed. R. Civ. P. 45(c)(2) (B)(i) (2007). In other words, under the prior version of Rule 45, the issuing court and the court of compliance were the same. In contrast, under the current version of Rule 45, the issuing court is the court where the litigation is

---

[1] At a conference on February 21, 2018, Defendants' counsel confirmed to the Court that they have no objection to the enforcement of the Subpoena. (See Transcript of February 21, 2018 Court Conference, Davidson, J., pp. 30:20-32:15, a copy of which is annexed to the Krouner Decl. as Exhibit E.)

REISMAN-SOROKAC
8965 SOUTH EASTERN AVENUE, SUITE 382
LAS VEGAS, NEVADA 89123
PHONE: (702) 727-6258 FAX: (702) 446-6756

pending. Nonetheless, under both the prior and current versions of Rule 45, the court for the district where compliance is required is the proper venue for a motion to compel.

JMC Restaurant Holdings, LLC v. Pevida, 2015 WL 2240492, at *3 (E.D.N.Y. 2015) (Scanlon, J.).

In JMC Restaurant Holdings, the Eastern District found that the proper venue for compelling a deposition in Manhattan was the Southern District of New York, even when the subpoena was issued by the Eastern District of New York. Id. at **3-4. Numerous other recent cases came to the same conclusion. See KGK Jewelry LLC v. ESDNetwork, 2014 WL 1199326, at *2 (S.D.N.Y. 2014) ("After the 2013 amendments, Rule 45 now requires subpoenas to issue from 'the court where the action is pending,' Fed. R. Civ. P. 45(a)(2), but still reserves the power to quash or modify a subpoena to the 'court for the district where compliance is required,' Fed. R. Civ. P. 45(d(3)).").

Similarly, this Court has found that "[w]hile the court where the action is pending issues subpoenas, the authority to adjudicate a motion to compel arising out of those subpoenas is vested with the court where compliance is required." Argento v. Sylvania Lighting Services Corp., 2015 WL 4918065, at *3 (D. Nev. August 18, 2015); Bridge v. Credit One Financial, 2015 WL 3938367, at *1 (D. Nev. June 25, 2015) ("[T]his Court lacks jurisdiction to resolve a motion to quash [a non-party subpoena] when the place where compliance is required is located in another district."); Agincourt Gaming, LLC v. Zynga, Inc., 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014) ("The previous version of Rule 45 provided that the issuing court possesses jurisdiction to quash or modify subpoenas, whereas the current version of the Rule provides that the court for the district where compliance is required has jurisdiction to quash or modify subpoenas.") (citations and quotation marks omitted).

REISMAN·SOROKAC
8965 SOUTH EASTERN AVENUE, SUITE 382
LAS VEGAS, NEVADA 89123
PHONE: (702) 727-6258 FAX: (702) 446-6756

Here, the subpoena calls for Ms. Sturtevant's subpoena compliance, in Las Vegas, Nevada, where Ms. Sturtevant resides. Consequently, the proper venue for enforcement of the subpoena is the United States District Court for the District of Nevada.

Consequently, this Court is the proper venue for enforcing the Subpoena against a non-party.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' motion to compel deposition subpoena should be granted.

Dated this 27th day of March, 2018.

REISMAN SOROKAC

/s/ Joshua H. Reisman, Esq.
JOSHUA H. REISMAN, ESQ.
Nevada Bar No. 7152
GLENN M. MACHADO, ESQ.
Nevada Bar No. 7802
8965 S. Eastern Ave, Suite 382
Las Vegas, Nevada 89123

*Attorneys for Plaintiffs*

REISMAN·SOROKAC
8965 SOUTH EASTERN AVENUE, SUITE 382
LAS VEGAS, NEVADA 89123
PHONE: (702) 727-6258 FAX: (702) 446-6756

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| A. DOE, E. DOE, K. DOE, M. DOE, S. DOE,<br>Y. DOE,<br><div align="center">Plaintiffs,</div><br><br><br>-against-<br><br>KURT LUDWIGSEN, in his individual capacity,<br>KIRSTEN LAMBERTSON, in her individual<br>capacity, MICHAEL G. SCALES, individually<br>and as President of Nyack College,<br>DAVID C. JENNINGS, individually and as<br>Executive Vice President of Nyack College,<br>KEITH DAVIE, individually and as Athletic<br>Director for Nyack College, AMANDA AIKENS,<br> individually and as Assistant Athletic Director for<br> Nyack College, TAYLOR BROWN, individually<br>and as Assistant Softball Coach for Nyack College,<br>KAREN DAVIE, individually and as Director of<br> Human Resources and Title IX Coordinator for<br>Nyack College, NYACK COLLEGE,<br>and DOES 1-10,<br><br><div align="center">Defendants.</div> | **DECLARATION OF TODD J.**<br>**KROUNER IN SUPPORT**<br>**OF PLAINTIFFS' MOTION**<br>**TO COMPEL SUBPOENA**<br>**COMPLIANCE** |

I, Todd J. Krouner, Esq., do declare and state the following under penalty of perjury:

1.      I am the attorney for the plaintiffs in the actions brought in the United States

District Court for the Southern District of New York.

2.      I submit this declaration in support of plaintiffs' Motion to Compel Subpoena

Compliance. I base this declaration upon personal knowledge and a review of my office's case

file.

3.      This is the case against Nyack College, its former softball coach Kurt Ludwigsen, and multiple Nyack College defendants.  One the allegations in this case that defendant Kurt Ludwigsen brought a porn star, known as Allie Haze, to meet with plaintiffs on Nyack College's campus, and later, had at least two plaintiffs to meet with Allie Haze in his office, after a second team meeting with her at his house.  The allegations are relevant, inter alia, to claims of sexual harassment, arising under Title IX, where it is alleged that Defendant Ludwigsen was grooming members of his softball team for the adult entertainment industry.  Moreover, where Nyack College branded itself as "New York's Christian College," and explicitly prohibited the promotion of pornography, the three sets of meetings with the porn star also support plaintiffs' claims for negligent supervision.

4.      On or about October 26, 2017, I caused to be issued a subpoena ad testificandum and duces tecum, addressed to Brittany Sturtevant ("Ms. Sturtevant"), a.k.a. Allie Haze (the "Subpoena").  The Subpoena called for her deposition on December 18, 2017, in Las Vegas, Nevada, where she resides.  A copy of the Subpoena is annexed hereto as Exhibit A.

5.      On or about November 2, 2017, Ms. Sturtevant was served with the Subpoena.  A copy of  Proof of Service is annexed hereto as Exhibit B.

6.      On or about December 5, 2017, Ms. Sturtevant called my office and informed my legal assistant, Julia Gallo ("Ms. Gallo"), that she was seeking an attorney to represent her at the deposition.  Ms. Sturtevant also stated that she could not confirm her availability for December 18, 2018.  Ms. Sturtevant said she would get back to Ms. Gallo with the dates of her availability on or before December 14, 2017.

2

7.      On or about December 6, 2017, Ms. Gallo sent Ms. Sturtevant a letter confirming her telephone conversation on December 5, 2017.  Ms. Gallo also stated that if Ms. Sturtevant got back to us on December 14, 2017, it would only leave us four days to confirm her deposition, which would be insufficient.  Consequently, Ms. Gallo asked Ms. Sturtevant to provide us with the dates of her availability in January 2018.  A copy of Ms. Gallo's December 6, 2017 letter is annexed hereto as Exhibit C.

8.      After not hearing from Ms. Sturtevant, on or about December 14, 2017, Ms. Gallo called her and left a voicemail.

9.      Ms. Gallo called Ms. Sturtevant, again, six more times, on or about December 18, 2017, January 10, 2018, January 17, 2018, January 29, 2018, February 6, 2018 and February 8, 2018.

10.      Ms. Gallo also sent Ms. Sturtevant three emails, on or about January 11, 2018, January 26, 2018 and February 8, 2018.  In Ms. Gallo's January 26, 2018 and February 8, 2018 emails, Ms. Gallo stated that all attorneys of record are available for her deposition in Las Vegas, Nevada, on March 27, 2018, March 28, 2018 and March 29, 2018.  Ms. Gallo asked Ms. Sturtevant to confirm her availability for any of these dates.  Copies of Ms. Gallo's emails are annexed hereto collectively as Exhibit D.

11.      To date, neither Ms. Sturtevant, nor any attorney on her behalf, has replied. Consequently, Plaintiffs seek an Order compelling Ms. Sturtevant's videotaped deposition on April 30, 2018, at the Reisman Sorokas law office, in Las Vegas, Nevada, and, compelling production of all responsive documents to the subpoena by 5 P.M. on April 16, 2018.

3

12.     At a conference before the Court on February 21, 2018 (the "Conference"),
Defendants' counsels confirmed that they have no objection to the enforcement of the Subpoena.
A copy of the Conference transcript is annexed hereto as Exhibit E, pp. 30:20-32:15.

13.     A prior request for the relief sought herein was made previously to the Hon. Paul
Davison, United States Magistrate Judge, Southern District of New York, who is presiding over
the discovery of these actions.  By Order dated March 8, 2018, Magistrate Judge Davison denied
plaintiffs' motion without prejudice. A copy of his Order is annexed hereto as Exhibit F.


Executed on this 20th day of March, 2018


                                        /s/Todd J. Krouner
                                        Todd J. Krouner (TK0308)

4

EXHIBIT A

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Southern District of New York

| | |
|---|---|
| A. Doe, E. Doe, K. Doe, M.Doe, S. Doe, Y. Doe | )<br>) |
| _Plaintiff_ | ) |
| v. | )   Civil Action No.   7:15-cv-07827 |
| Kurt Ludwigsen | )<br>) |
| _Defendant_ | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                           Brittany Sturtevant

_____
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Reisman Sorokas<br>       8965 South Eastern Avenue, Suite 382<br>       Las Vegas, NV 89123 | Date and Time:<br>     12/18/2017 10:00 am |
|---|---|

The deposition will be recorded by this method:   stenography

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attachment I.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/26/2017

           _CLERK OF COURT_

                                     OR     _Todd J. Krouner_

          _Signature of Clerk or Deputy Clerk_                      _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   A. Doe, E. Doe,
K. Doe, M. Doe, S. Doe, Y. Doe                     , who issues or requests this subpoena, are:

Todd J. Krouner, 93 North Greeley Avenue, Chappaqua, NY 10514, tkrouner@krounerlaw.com, 914-238-5800

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 7:15-cv-07827

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

&#9633; I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

&#9633; I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT I

1.      Current copy of your *curriculum vitae* or resume.

2.      For the period of January 1, 2012, to the present, a copy of all documents concerning any communications including without limitation, letters, Facebook messages, emails, twitter messages and text messages, between you and:

> a)  Kurt Ludwigsen;
>
> b)  Verified Call;
>
> c)  Any student-athlete at Nyack College;
>
> d)  Any member of the press concerning Kurt Ludwigsen; and
>
> e)  Any other person or entity concerning Kurt Ludwigsen.

3.      A copy of all documents concerning your travel to New York and/or New Jersey (*i.e.* travel itineraries, rental car agreements, *etc.*) in February 2015, when you stayed at the residence of Kurt Ludwigsen, in Ridgewood, New Jersey (the "February 2015 Trip").

4.      A copy of all documents concerning your professional appointment or professional activities during the February 2015 Trip.

5.      For the period of January 1, 2012, to the present, a copy of all documents concerning your speaking engagements at any college and/or university other than Nyack College.

6.      For the period of January 1, 2012, to the present, a copy of all documents concerning any money paid to you by Kurt Ludwigsen.

7.      For the period of January 1, 2012, to the present, a copy of all documents concerning any money paid to you by Verified Call.

8.      For the period of January 1, 2012, to the present, a copy of all documents concerning any promotional or convention events that you attended at which Kurt Ludwigsen was also present.

9.      All photographs of Kurt Ludwigsen.

10.     All photographs concerning the February 2015 Trip.

EXHIBIT B

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 7:15-cv-07827

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* BRITTANY STURTEVANT on *(date)* Nov 2, 2017, 3:50 pm.

[X]   I served the subpoena by delivering a copy to the named individual as follows: SEE BELOW on *(date)* Tue, Nov 07 2017; or

[ ]   I returned the subpoena unexecuted because: _____.

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ 36.77.

My fees are $ _____ for travel and $ _____ for services, for a total of $ $50.00.

I declare under penalty of perjury that this information is true.

Date: NOVEMBER 8, 2017

*Stephen t. Popovich*
*Server's signature*

STEPHEN T. POPOVICH R-063607
*Printed name and title*

ACE Executive Services, LLC (NV #2021C)
8275 S EASTERN AVE STE 200
LAS VEGAS, NV 89123
702 919-7223
Job: 1779205

*Server's address*

Additional information regarding attempted service, etc.:
1) Unsuccessful Attempt: Nov 5, 2017, 9:37 am PST at 7015 CORDITE RD, LAS VEGAS, NV 89178
Could not get to front door - locked gate; door bell missing; left notice
called 818 934-6969 - no message or i.d.; mail box full
called 909 659-3450 - no message or i.d - left message

2) Successful Attempt: Nov 7, 2017, 9:43 am PST at 7015 CORDITE RD, LAS VEGAS, NV 89178 received by BRITTANY STURTEVANT. Age: 20s; Ethnicity: Caucasian; Gender: Female; Weight: 140; Height: 5'10"; Hair: Black;

EXHIBIT C

**LAW OFFICE OF TODD J. KROUNER, P.C.**
93 NORTH GREELEY AVENUE
CHAPPAQUA, NEW YORK 10514
(914) 238-5800

TODD J. KROUNER*
_____
*ADMITTED IN NY & NJ

December 6, 2017

**VIA EMAIL AND FIRST CLASS MAIL**

Ms. Brittany Sturtevant
7015 Cordite Road
Las Vegas, Nevada 89178

     Re:    <u>Does v. Ludwigsen</u>

Dear Ms. Sturtevant:

    Further to our telephone conversation yesterday, I understand that presently you are unable to confirm your availability for your deposition on December 18, 2017, in Las Vegas.

    I also understand that you are seeking legal representation concerning your subpoena, and get back to me on December 14, 2017, to confirm your availability. However, this would leave us with only four days to confirm the deposition on December 18, 2017, which is not sufficient. Consequently, please provide us with dates of your availability, on Monday or Friday, in January 2018.

    Finally, please feel free to have your attorney to contact us concerning the foregoing.

    I look forward to hearing from you.

    Best regards.

                    Very truly yours,

                    Julia Gallo
                    Executive Assistant to Todd J. Krouner

TJK/jg

cc:    Carla Varriale, Esq.
       Michael Burke, Esq.
       (via e-mail only)

EXHIBIT D

## Julia Gallo

**From:** Julia Gallo
**Sent:** Thursday, January 11, 2018 11:10 AM
**To:** 'brittanyjoyinfo@gmail.com'
**Cc:** Todd J. Krouner
**Subject:** Does v. Ludwigsen

| Tracking: | Recipient | Delivery | Read |
|---|---|---|---|
| | 'brittanyjoyinfo@gmail.com' | | |
| | Todd J. Krouner | Delivered: 1/11/2018 11:10 AM | Read: 1/11/2018 12:32 PM |

Dear Ms. Sturtevant:

As I indicated in my voicemail, February 19 and February 23 for your deposition do not work for all of the attorneys in the case.

Please advise whether or not you are available the week of February 12, 2018 (any day, not just Monday and Friday). Otherwise, please provide more dates for your availability.

Best regards,

Julia Gallo
Executive Assistant to Todd J. Krouner

Law Office of Todd J. Krouner, P.C.
93 North Greeley Avenue
Chappaqua, New York 10514
Telephone: (914) 238-5800
jgallo@krounerlaw.com
www.Krounerlaw.com

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

1

## Julia Gallo

| | |
|---|---|
| **From:** | Julia Gallo |
| **Sent:** | Friday, January 26, 2018 5:51 PM |
| **To:** | brittanyjoyinfo@gmail.com |
| **Cc:** | Todd J. Krouner |
| **Subject:** | Does v. Ludwigsen |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | brittanyjoyinfo@gmail.com | | |
| | Todd J. Krouner | Delivered: 1/26/2018 5:51 PM | Read: 1/26/2018 6:23 PM |

Dear Ms. Sturtevant:

All attorneys of record are available for your deposition in Las Vegas, Nevada, on March 27, 2018, March 28, 2018 or March 29, 2018.

Please advise which of these dates is preferable for you.

Best regards,

Julia Gallo
Executive Assistant to Todd J. Krouner

Law Office of Todd J. Krouner, P.C.
93 North Greeley Avenue
Chappaqua, New York 10514
Telephone: (914) 238-5800
jgallo@krounerlaw.com
www.Krounerlaw.com

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

## Julia Gallo

| | |
|---|---|
| **From:** | Julia Gallo |
| **Sent:** | Thursday, February 08, 2018 5:32 PM |
| **To:** | brittanyjoyinfo@gmail.com |
| **Cc:** | Todd J. Krouner |
| **Subject:** | Does v. Ludwigsen |

| **Tracking:** | **Recipient** | **Delivery** | **Read** |
|---|---|---|---|
| | brittanyjoyinfo@gmail.com | | |
| | Todd J. Krouner | Delivered: 2/8/2018 5:32 PM | Read: 2/8/2018 5:50 PM |
| | Jessica Yanefski | Delivered: 2/8/2018 5:32 PM | Read: 2/8/2018 6:37 PM |
| | jreisman@rsnvlaw.com | | |

Dear Ms. Sturtevant:

Further to my assistant's voicemails on January 29, 2018, February 6, 2018 and today, and mindful of our court conference tomorrow, please advise whether any of March 27, 2018, March 28, 2018 or March 29, 2018 are convenient for your deposition.

If we do not hear from your by tomorrow, we shall be forced to seek the assistance of the Federal Court to compel your deposition.

Very truly yours,

Todd Krouner (from the desk of Julia Gallo)


Julia Gallo
Executive Assistant to Todd J. Krouner

Law Office of Todd J. Krouner, P.C.
93 North Greeley Avenue
Chappaqua, New York 10514
Telephone: (914) 238-5800
jgallo@krounerlaw.com
www.Krounerlaw.com

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

EXHIBIT E

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------------x

 3   A. DOE, E. DOE, K. DOE, M. DOE,
     S. DOE and Y. DOE.
 4
                    Plaintiffs,
 5
             -against-                        15 Civ. 7822(CS)(PED)
 6
     KURT LUDWIGSEN, in his individual
 7   capacity, KIRSTEN LAMBERTSON, in
     her individual capacity, MICHAEL
 8   G. SCALES, individually and as
     President of Nyack College, DAVID
 9   C. JENNINGS, individually and as
     Executive Vice President of Nyack
10   College, KEITH DAVIE,
     individually and as Athletic
11   Director for Nyack College,
     TAYLOR BROWN, individually and as
12   Assistant Softball Coach for
     Nyack College, KAREN DAVIE,
13   individually and as Director of
     Human Resources and Title IX
14   Coordinator for Nyack College,
     NYACK COLLEGE and DOES 1-10,
15
                    Defendants.
16
     ------------------------------------x
17
                                  United States Courthouse
18                                White Plains, New York
                                  February 21, 2018
19

20   B e f o r e:
                   HONORABLE PAUL E. DAVISON,
21                            United States Magistrate Judge

22

23

24

25

                 Angela O'Donnell, RPR, 914-390-4025
```

2

1    A P P E A R A N C E S:

2    LAW OFFICE OF TODD J. KROUNER
             Attorneys for Plaintiffs
3            93 North Greeley Avenue, Suite 100
             Chappaqua, New York 10514
4    BY:  TODD J. KROUNER
         JESSICA YANEFSKI

5

6    HAVKINS ROSENFELD RITZERT & VARRIALE
             Attorneys for Nyack College
7            One Battery Park Plaza, Sixth Floor
             New York, New York 10004
8    BY:  MICHELLE L. BOCHNER

9

10   BURKE MIELE & GOLDEN LLP
             Attorneys for Kurt Ludwigsen
             40 Matthews Street, Suite 209
11           Goshn, New York 10924
     BY:  MICHAEL K. BURKE

12

13                      .

14

15

16

17

18

19

20

21

22

23

24

25

1         THE CLERK:  In the matter of K. Doe, et al. versus

2    Kurt Ludwigsen, et al.

3         Counsel, please stand and note your appearance for

4    the record.

5         MR. KROUNER:  Todd J. Krouner and Jessica Yanefski

6    for the plaintiffs from the Law Office of Todd J. Krouner PC.

7         THE COURT:  Welcome, counsel.

8         MR. KROUNER:  Thank you.

9         MS. BOCHNER:  Good afternoon, Michelle Bochner,

10   Havkins Rosenfeld Ritzert & Varriale for the Nyack College

11   defendants.

12        THE COURT:  Good afternoon.

13        MR. BURKE:  Good afternoon, your Honor.  Michael

14   Burke, Burke Miele & Golden, on behalf of Kirk Douglas.

15        THE COURT:  Good afternoon, Mr. Burke.

16        All right, we are gathered for what is, by my rough

17   count, twentieth discovery related conference in this case, the

18   fifth in person of such gathering; and it is in response to a

19   series of communications that I think began with Ms. Bochner's

20   letter dated February 5th and there are a series of letters

21   back and forth since that first letter.

22        So I guess you go first, Ms. Bochner.

23        MS. BOCHNER:  Thank you, your Honor.  The issue

24   currently at hand is certain emails.  Back in July 2017 and

25   earlier, as far as the start of discovery, defendants requested

1    from plaintiffs all of their email communications.  We were

2    provided with snippets of various emails and we were not

3    provided with any privilege logs.

4             Recently, in closing out discovery, our office came

5    into the possession of all of the plaintiff's Nyack.edu emails.

6             THE COURT:  How did that happen?

7             MS. BOCHNER:  Our client is in possession of the

8    Nyack.edu emails on their server.  According to the handbook,

9    they have access to these emails.  Plaintiffs never demanded

10   copies of their own emails from us.  In contrast, we did demand

11   copies of all of plaintiff's emails from the plaintiffs and

12   were not provided with complete copies.

13            THE COURT:  Do they have a server, as far as you

14   know?

15            MS. BOCHNER:  Well, the plaintiffs have access to

16   their own emails so -- they all testified that they had access

17   to their Nyack.edu emails and could go on and delete them, send

18   emails from them at their depositions, which is then when we

19   sent demands of each plaintiff for their Nyack.edu emails.

20            THE COURT:  Go ahead.

21            MS. BOCHNER:  So in the light of continued

22   disclosure, we produced upon plaintiff's counsel all of their

23   Nyack.edu emails along with a privilege log --

24            THE COURT:  Let me go back to something.  You think

25   that notwithstanding the fact that your client is in control of

1   the server that these individual plaintiffs -- what's your

2   basis for thinking they have access to all their prior emails?

3          MS. BOCHNER:  They testified that they have access to

4   their emails.

5          THE COURT:  To all their prior emails?

6          MS. BOCHNER:  They have --

7          THE COURT:  I mean --

8          MS. BOCHNER:  Yes.  Aside from --

9          THE COURT:  Aside from what --

10         MS. BOCHNER:  -- what they deleted.

11         THE COURT:  Right.  But, you know, many people

12   customarily delete their emails after they read them or

13   after -- periodically; isn't that right?

14         MS. BOCHNER:  I don't believe we produced emails that

15   were deleted.  We produced emails from the Nyack.edu email

16   address.

17             In any event, we demanded this on plaintiff.

18   Plaintiff did not respond with, plaintiffs do not have access.

19   They responded with snippets and certain emails that they chose

20   to provide in response to our demand.  They did not provide a

21   privilege log to emails which are presumably within their email

22   account.  We produced all the non-privileged emails to

23   plaintiffs along with a privilege log which contained

24   approximately 190 emails which are between various plaintiffs

25   and plaintiffs' counsel.  These emails were not reviewed,

1    however, based upon the clear language of the Nyack College

2    handbook, as well as case law in this circuit, the emails are

3    not entitled to attorney-client privilege because any privilege

4    was waived by using these.

5            THE COURT:  All right, before we get to issues of the

6    privilege and whether it was waived, I think I'd like to hear

7    from plaintiffs' counsel on the issue of whether this is simply

8    filling in material that was demanded from plaintiffs and not

9    produced.

10           MS. YANEFSKI:  Ms. Yanefski, your Honor, for the

11    plaintiffs.

12           THE COURT:  Sure.

13           MS. YANEFSKI:  The short answer is no.  The

14    recollection by Ms. Bochner that her office requested the

15    emails from the plaintiffs of their Nyack.edu accounts at the

16    depositions is not my recollection upon reviewing the record.

17    My recollection is that plaintiffs --

18           THE COURT:  Was it your recollection or have you

19    reviewed the record?

20           MS. YANEFSKI:  I reviewed the record.  That

21    plaintiffs are the ones who requested the Nyack.edu email

22    accounts at the depositions because defendants, Nyack College,

23    had custody and control over those emails and that Mr. Burke

24    then joined in on that request.

25           But simply it's preposterous and confusing where

1    Ms. Bochner admits that Nyack College had custody and control

2    of these emails at all times and she doesn't proffer any sort

3    of scenario where they had not been accessible and now are

4    accessible.  They were theirs at all times, and regardless of

5    whether or not the plaintiffs ever were asked to produce, which

6    I don't believe that they were, these emails, these are emails

7    that, if defendants ever intended to use them, they should have

8    put them in their Rule 26(a) disclosures.

9              THE COURT:  I get that, and what I'm trying to figure

10   out is whether this represents, this eleventh hour, 11:59 hour

11   disclosure of these emails from Nyack College's custody and

12   control, whether that represents an outrageous discovery

13   violation by defendants or whether on the other hand they're

14   backing and filling something that was requested from

15   plaintiffs that plaintiffs could have produced and didn't

16   produce.

17             MS. YANEFSKI:  That was requested of plaintiffs?

18             THE COURT:  Yes.

19             MS. YANEFSKI:  I would say that your Honor is correct

20   with the former that this is an outstanding eleventh hour

21   discovery production where plaintiffs requested the emails of

22   defendants at the time of their deposition, and further,

23   plaintiffs requested in our first discovery demand all

24   documents and communications by the Nyack College individual

25   defendants, anyone in that administration, and we were told

                  Angela O'Donnell, RPR, 914-390-4025

1    that there were no documents responsive to the request, we

2    never saw those --

3           THE COURT:  That's a separate issue though.  Okay, I

4    hear you on this.

5           Ms. Bochner, this is knowable.  Is this something

6    that defendants demanded or not?

7           MS. BOCHNER:  Your Honor, defendants did demand this

8    on July 17, 2017 to K. Doe in post-deposition demands.

9           THE COURT:  You're talking very fast.

10          MS. BOCHNER:  Sorry, I apologize.  July 17, 2017,

11   defendant served post-deposition demands on K. Doe, which,

12   demanded any and all email correspondence from K. Doe's Nyack

13   College accounts.  That was just to K. Doe.  Demanding --

14   defendant was never served with demands for plaintiffs' own

15   emails.  Plaintiffs testified that they had their emails.  We

16   were provided with certain emails in response to this demand,

17   emails which were picked and chosen by plaintiffs' counsel.

18          THE COURT:  You demanded all emails --

19          MS. BOCHNER:  Correct.

20          THE COURT:  -- that they --

21          MS. BOCHNER:  From the Nyack College email accounts

22   and plaintiffs.

23          THE COURT:  And what did plaintiffs -- I mean, that

24   on its face sounds like an outrageously broad demand.  What was

25   the response?

1        MS. BOCHNER:  Plaintiffs provided emails that related

2   to the 2014/2015 softball and the individuals whom they

3   believed this was related to.

4        We believe that they're all relevant because of the

5   emotional damages and the claims that plaintiffs are making as

6   far as damages makes all of these emails discoverable to see

7   how they were affected in their life when they are testifying

8   that their school work was harmed, their relationship with

9   their friend, their relationships with their family, their

10  relationships with their church and their religion

11  (unintelligible) all of their emails and the way they were

12  communicating and corresponding with others at issue.

13       It was plaintiffs' burden to produce their emails,

14  aside from the demand that was served upon them, it was

15  plaintiffs' burden to produce their own emails according to

16  Rule 26, and the fact that they picked and chose --

17       THE COURT:  It's their burden to produce their own --

18  what does that mean according to Rule 26?

19       MS. BOCHNER:  It's a discoverable item.

20       THE COURT:  Every time in every case Rule 26 requires

21  everybody to serve -- to give the other side all their emails?

22       MS. BOCHNER:  When we requested all of their emails.

23       THE COURT:  What did plaintiffs' counsel respond to

24  that request?

25       MS. BOCHNER:  I don't have the formal response in

Angela O'Donnell, RPR, 914-390-4025

1    front of me but they did not --

2           THE COURT:  In other words, did they interpose

3    objections and say, we're giving you the ones that involve the

4    softball team or did they say, these are all of them and only

5    gave you some of them.

6           MS. BOCHNER:  No, they only produced some emails.

7           THE COURT:  But did they interpose objections?

8           MS. BOCHNER:  They did interpose objections, and then

9    they provided certain emails.  We don't know which emails are

10   left out --

11          THE COURT:  So your remedy at that time would have

12   been to write me a letter saying they're improper, in your

13   view, they're improperly withholding emails about other

14   subjects that might shed light on their damages or whether

15   they're -- been affected in the ways that they claim.  Isn't

16   that right?

17          MS. BOCHNER:  That's correct.  We went back and forth

18   on the issue many times as far as social media records, letters

19   back and forth as far as emails and what was being disclosed,

20   and we kept getting additional responses, here's further

21   emails, here's further social media requests, and, no, we did

22   not come back and burden the Court as far as the emails.  It

23   wasn't our intention to do a eleventh-hour email drop, it's

24   that we came into possession of these emails --

25          THE COURT:  You keep saying, we came into possession

                    Angela O'Donnell, RPR, 914-390-4025

1    of them as though somebody left them on your doorstep at

2    midnight or something.  Your client had them, they were on the

3    server.  You, for whatever reason, didn't access that until the

4    end of discovery.

5              MS. BOCHNER:  We did not.  The way that it came about

6    that we did seek out and access the emails, because we were not

7    served with a demand by plaintiffs for these emails, is that at

8    the deposition of a non-party -- are we using -- K with a --

9    are we using (inaudible).

10             MR. BURKE:  I guess K.L.

11             MS. BOCHNER:  K.L.

12             THE COURT:  Who is not Kirsten Lambertson.

13             MS. BOCHNER:  Correct.  Is not Kirsten Lambertson,

14   who is a non --

15             MR. BURKE:  Or Kurt Ludwigsen.

16             THE COURT:  Or Kurt Ludwigsen.

17             MR. KROUNER:  Or Y. Doe with the same initials.

18             THE COURT:  Okay.

19             MS. BOCHNER:  So at her deposition, the subject of

20   emails came about in her Nyack.edu emails and Ms. Varriale, the

21   attorney from my office who was doing the deposition, asked her

22   that she would be requesting copies of her Nyack.edu emails,

23   and Ms. K.L. responded, you have those, you should be able to

24   access them, upon which Mr. Krouner said, yes, you should be

25   able to get access to your own emails.

1          It was at that time we reached out to the IT

2     department at Nyack College and we asked them, do we have

3     access to these without authorization.

4          THE COURT:  When was that?

5          MR. BURKE:  That was recent.

6          MS. BOCHNER:  It was in November or December of this

7     year was this deposition.  We reached out to the IT department

8     to determine whether we could, in fact, get the Nyack.edu

9     emails without any authorizations from plaintiffs since they

10    were never provided with authorizations, and the IT

11    department --

12         THE COURT:  Had you requested authorizations for the

13    emails on the server?

14         MS. BOCHNER:  We didn't because we were never asked

15    to produce the emails, so we didn't seek out authorizations to

16    provide plaintiffs with their own emails, presumably they had

17    access to their own emails which is why we demanded their

18    emails from them.  When we did get possession of these emails

19    after reaching out to the IT department, we disclosed them.

20         THE COURT:  And within that universe of thousands of

21    emails is nestled this smaller selection of emails which you

22    have identified as potentially privileged.

23         MS. BOCHNER:  Correct.  And I will admit that many of

24    the thousands of emails are not relevant, they don't involve

25    softball or what took place in 2014/2015.

Angela O'Donnell, RPR, 914-390-4025

1          THE COURT:  So if they're not relevant, you really

2   couldn't have expected plaintiffs to produce them.

3          MS. BOCHNER:  Except we did demand all emails.

4          THE COURT:  Even though you just said they weren't

5   relevant.

6          MS. BOCHNER:  Correct.

7          MR. BURKE:  Only after review though.

8          MS. BOCHNER:  Only after review.  It was our -- we

9   demanded them.  It's now our opinion that many of them aren't

10  relevant, but plaintiff didn't give us that opportunity to

11  determine that.  Plaintiff made the decision on their own, as

12  well as deciding on their own not to produce a privilege log.

13  They chose just not to tell us about emails that did relate to

14  the lawsuit likely because of the dates of the emails.  They

15  just opted to not provide anything to us.

16          Now all we can go on the privilege emails is the date

17  of the email, and our presumption is that, if something was

18  sent between 2014 and 2017 from a Nyack dot email, it may

19  relate to --

20          THE COURT:  And it goes to Mr. Krouner's office.

21          MS. BOCHNER:  Correct.  Though that's all we know

22  right -- that's all we know about these emails is the date of

23  them and who they're to and who they're from.  We have no idea

24  the rest of the subject nature of them.

25          THE COURT:  Right.  But you don't have any reason to

Angela O'Donnell, RPR, 914-390-4025

1   think that they have any other relationship apart from

2   attorney-client.

3          MS. BOCHNER:  No, apart from the lawsuit.  Oh, no,

4   except the position, our argument that any emails sent through

5   the Nyack email server have waived the privilege.

6          Plaintiffs all testified that they had other emails

7   which, I'm not arguing if they've waived any privilege on

8   private Gmail accounts or Yahoo accounts, which they all

9   testified to having, and we also requested emails from those

10  accounts, it's just -- and there was no privilege log provided

11  for that either, but specifically the Nyack.edu emails are not

12  entitled to any privilege and they voluntarily waived that

13  privilege by using that email.

14         THE COURT:  What I'm still stuck on is why is it okay

15  for Nyack College to sit on this trove of emails and based on

16  the -- if it is true, as apparently is stated in the student

17  handbook, and I'm looking for where you quote this, if it is

18  true that extra copies of all data are kept in the routine

19  process of back-up and that consequently deletions of online

20  files by a user does not mean that no other copy remains, that

21  that suggests to me, if it's true, that your client has a more

22  comprehensive collection of these emails than could likely be

23  found anywhere else.

24         MS. BOCHNER:  Yes, your Honor, but it's not our

25  burden to provide plaintiff with this discovery that wasn't

1     requested from us.  These are -- this is something that we

2     requested from plaintiff.

3          THE COURT:  Well if it's something that you want to

4     use, then it's supposed to be disclosed in initial disclosures

5     or at least described there and, you know, what you're telling

6     me is that counsel for Nyack College never knew that they had

7     all this until sometime presumably very shortly before you

8     turned it over to Mr. Krouner.

9          MS. BOCHNER:  Correct.  We continued to ask for these

10    emails from the plaintiffs' attorney.

11         THE COURT:  I want to hear from plaintiffs' counsel

12    about your version of how this issue of plaintiffs' Nyack.edu

13    emails was handled.

14         MS. YANEFSKI:  Very briefly at the outset, plaintiffs

15    don't want -- don't care about these emails, we don't want

16    these emails that are currently being produced in the action we

17    would like them precluded because of timing.

18         So it's outrageous that defendants didn't bring these

19    up in their Rule 26(a) initial disclosures, and they should be

20    time barred on that grounds alone, and then where plaintiffs

21    then demanded access and emails to the defendant

22    administrators, Nyack.edu emails --

23         THE COURT:  Again, let's leave the administrators out

24    of it.

25         MS. YANEFSKI:  Sure.

                Angela O'Donnell, RPR, 914-390-4025

1          THE COURT:  Let's focus on the ones that are

2     generated by the plaintiffs.

3          MS. YANEFSKI:  Right.  So the plaintiffs are not in

4     the same position as defendants to have access to and be able

5     to produce these emails where defendants say in their handbook

6     that they have them on hand --

7          THE COURT:  I get that, so defendants requested that

8     your clients produce all of their emails.  You objected to that

9     but said, we'll give you the emails that have to do with the

10    softball team; is that what happened?

11         MS. YANEFSKI:  I apologize that I don't have more

12    specific answer about that for your Honor, because this is the

13    first that I'm hearing from defendants' counsel about this

14    issue being one of plaintiffs' deficiencies.  That wasn't

15    mentioned in the first letter to the Court or in the amended

16    letter to the Court that was submitted last Wednesday.  The --

17         THE COURT:  I think it's in there somewhere, although

18    it's buried, but I regard this as very consequential.  If

19    plaintiffs received these demands, produced some emails,

20    acknowledged that there were others that were being withheld on

21    relevance grounds, and if that was the subject of some back and

22    forth, that's one thing.  If on the other hand, as Ms. Bochner

23    is suggesting, it was demanded and just never produced by

24    plaintiffs, that's something else again.

25         MS. YANEFSKI:  As far as plaintiffs are aware, we've

1    produced all relevant and responsive email communications to

2    defendants in response to all of their demands.

3              THE COURT:  Again, relevant as defined by plaintiffs,

4    but transparently defined, is that what you're telling me?

5              I think, in order to resolve this issue, I need to

6    see the correspondence back and forth on this.

7              MS. YANEFSKI:  Of course, and we would welcome the

8    opportunity to supplement this critical issue with your Honor.

9              THE COURT:  I think that's what we have to do,

10   because I think that it's going to come out differently

11   depending on what those documents reveal.  I don't think it's

12   okay for defendants to sit on a comprehensive set of these

13   emails, including materials that plaintiffs have refused to

14   produce on relevance grounds, and quite possibly materials that

15   plaintiffs may not even have access to anymore, and then pulled

16   them out of the hat at the eleventh hour.

17             On the other hand, if plaintiffs were in violation of

18   their discovery obligations, I suppose it becomes somewhat more

19   justifiable for defendants to go look elsewhere.

20             So I guess what I need is further briefing on that

21   issue.  I would like to hear from defense counsel, I'm sorry

22   from plaintiffs' counsel on this question of -- which I may or

23   may not have to reach, which is the question of whether

24   deploying this college email system in light of the disclaimers

25   that are contained in the rule book or the student handbook

                   Angela O'Donnell, RPR, 914-390-4025

1    operates as a waiver of the attorney-client privilege.   That

2    you can address right now.

3              MS. YANEFSKI:   Oh, sure.   No, it's not a waiver of

4    the attorney-client privilege.   The defendants cite to a case

5    that they contend is controlling in the Southern District, two

6    cases actually, *In Re: Asia Global Crossing* and *In Re: Reserve*

7    *Fund Securities and Derivative Litigation*.   The test in those

8    actions is a subjective one of what was the parties' reasonable

9    expectation of privacy with the understanding of the

10   complexities of an email server.   The business executives in

11   those two cases are going to have a very different expectation

12   of privacy and an understanding of the complexities of modern

13   communication than will college students who are just entering

14   the world of CC and BCC and sensitive communications for the

15   first time.   The result is very different, and the fact is that

16   our clients did not have an expectation that they were waiving

17   any right to privacy over their emails.   The --

18             THE COURT:   Well, I mean, if they'd read confidential

19   information relative to personal matters, internal

20   investigations and litigation should not be transmitted, users

21   should have no expectation of privacy while using

22   institution-owned or institution-laced equipment, information

23   passing through or stored on institution-owned equipment can

24   and will be monitored.   Nyack College maintains the right to

25   monitor and review internet use and email communications sent

                    Angela O'Donnell, RPR, 914-390-4025

1    or received as necessary, i.e. for troubleshooting, retrieving

2    business-related information, legal requests, et cetera.  So if

3    they read that, I'm not sure they would have had an expectation

4    of privacy.

5               MS. YANEFSKI:  If they read that, your Honor, and we

6    don't know that they did.  But if your Honor is of the opinion

7    that the privilege between attorney and client is waived via

8    transmission of such emails over the Nyack college servers,

9    then we would seek those same emails between Nyack employees

10   and their in-house counsel or out-of-house counsel on the email

11   servers on the same grounds.

12              THE COURT:  Well but it's too late for that; isn't

13   it?

14              In any event, what I need -- and I was fully

15   expecting to rule on this question today, but Ms. Bochner has

16   introduced an additional element into it here.  What I really

17   need is a chronological, walk-me-through what was demanded and

18   what the response was.  I don't need to see all of everything

19   that was produced, but if there were objections interposed and

20   then some kind of a meet and confer resolving that, I need to

21   know what it was and I think it has to be done with reference

22   to the actual written communications and not every recollection

23   now.

24              Fair enough?

25              MS. YANEFSKI:  Yes, your Honor.

                Angela O'Donnell, RPR, 914-390-4025

1          THE COURT:  Ms. Bochner, the other issue relates to

2    this Allyssa Perez?

3          MS. BOCHNER:  Yes, your Honor.  Allyssa Perez --

4          MS. YANEFSKI:  I'm sorry, before we depart this

5    issue, may I just confirm that Ms. Bochner's office will be

6    making the opening salvo on these papers and we're provided

7    with the opportunity to respond since this is Ms. Bochner's

8    motion?

9          THE COURT:  I don't really want argument.  I want to

10   know what plaintiffs asked for and what -- I'm sorry, what

11   defendants asked for and what plaintiffs respond.  If the two

12   sides could get together and just create a sort of call-in

13   response, that would be wonderful.  If you can't work together

14   on that, then, you know, just send me what you think the back

15   and forth was.

16         MS. YANEFSKI:  I appreciate the clarification.

17         THE COURT:  I'm not looking for a back and forth or

18   argument type of thing.  I just want to know who said who --

19   what to who, and you can work out how to do it, and I think if

20   there are going to be two submissions, they should be

21   simultaneous.

22         MS. BOCHNER:  Yes, your Honor.

23         THE COURT:  How much time do we need to do something

24   like that, a week?

25         MS. BOCHNER:  A week.

1          MS. YANEFSKI:  A week is fine.

2          THE COURT:  A week.

3          So, back to you, Ms. Bochner.  Ms. Perez.

4          MS. BOCHNER:  The other issue relates to emails and

5    documents that were demanded of plaintiffs' counsel between

6    them and Ms. Allyssa Perez, a non-party witness in this case

7    who was produced for a deposition following a subpoena by

8    Mr. Krouner.  Ms. Perez testified about various email

9    correspondence and documents that were provided by herself to

10   plaintiffs' counsel and individuals in his office.

11         We served demands on plaintiffs' counsel for emails,

12   documents provided from Ms. Perez to plaintiffs' counsel that

13   she testified about at her deposition, and the response we got

14   was that these are attorney work product and they would not be

15   turned over.  We were given a privilege log from plaintiffs'

16   counsel with 11 items that said attorney work product doctrine.

17         Following the deposition of Allyssa Perez, we also

18   subpoenaed documents from Ms. Perez, which we have not received

19   a response from; however, it's our position that there is no

20   privilege between Mr. Krouner and this non-party, Allysssa

21   Perez, based upon case law that's referenced in my letter that

22   Ms. Perez is not a party to the action, she has no privity with

23   Mr. Krouner, she -- they cannot assert work product over emails

24   sent and information that Ms. Perez provided to plaintiffs

25   counsel.  She has no common interest as far as the parties in

Angela O'Donnell, RPR, 914-390-4025

1  this lawsuit.  She, during her deposition testimony, made no

2  claims concerning the subject matter of the lawsuits and we

3  would therefore ask that the emails which have been included on

4  the privilege log and provided to Mr. Krouner between Allysssa

5  Perez and plaintiffs' counsel are not privileged, are not

6  entitled to attorney work-product privilege and should be

7  turned over to our office in the course of discovery and in

8  response to the demands that we served.

9          THE COURT:  Who wants to field this one?

10         MS. YANEFSKI:  Maybe I can put this to rest very

11  easily, your Honor.  It's our understanding that Ms. Perez

12  produced all of the emails that were subpoenaed from her today.

13  I don't know if you've seen those yet, and that she didn't

14  claim privilege.  So I think that the issue is moot.

15         MS. BOCHNER:  Your Honor, we have yet -- we have yet

16  to receive anything, and, again, this only adds to the issue

17  that Ms. Perez was not a non-party.  She clearly is in

18  communication with plaintiffs' --

19         THE COURT:  Well, she is a non-party.

20         MS. BOCHNER:  I mean that she is a non-party.  She

21  clearly has a relationship that plaintiffs' counsel appears to

22  know that she provided us with certain documents, and that

23  doesn't address the issue that there's no attorney work

24  product.

25         THE COURT:  Is this --

1          MS. BOCHNER:  And plaintiffs' counsel should have

2    given us this information.

3          THE COURT:  There are 11 specified documents on

4    that --

5          MS. BOCHNER:  Privilege log.

6          THE COURT:  -- privilege log.

7          MS. BOCHNER:  Yes.

8          THE COURT:  If she's given you all 11, does that put

9    this to rest?

10         MS. BOCHNER:  Assuming that it's complete copies of

11   everything, which there's really no way to know whether

12   Ms. Perez has provided us with complete copies.  If all the

13   pages are the same -- all we have is number of emails, we don't

14   have the number of pages in those emails.  So if we can be

15   given some kind of information to compare and know that the

16   information that Ms. Perez has allegedly provided us in

17   response to the subpoena is exactly the same as the information

18   that Mr. Krouner has, then that would likely put the issue to

19   rest.

20         MR. KROUNER:  Your Honor, I'm standing because I'm

21   looking at an email from what appears to be Allysssa Perez to

22   Brandon Smith, who is Ms. Bochner's paralegal, describing the

23   attachment of a zip file with the subpoenaed records what

24   appears to be 1:30 p.m. this afternoon.

25         MS. BOCHNER:  Well, if that's the case --

Angela O'Donnell, RPR, 914-390-4025

1          THE COURT:  Well -- right.

2          MR. KROUNER:  Not -- not to harp on the timing and

3    the fineness of who saw or read what, and not to step on my

4    associate's representation on this issue, but the short point

5    is two:  One, I believe the materials, as of this moment, have

6    been provided to defendants' counsel by Ms. Perez, period, full

7    stop; two, in any event, I assert a work product doctrine

8    privilege with respect to my communications with anybody

9    concerning the subject matter of this lawsuit in the absence of

10   a showing of hardship to the defendant Nyack College in this

11   instance that they cannot otherwise get the material.

12          THE COURT:  You know, it seems to me that you're

13   arguing a completely moot point here if Ms. Perez has turned

14   these materials over to defendants' counsel because clearly

15   they're no longer confidential.

16          MR. KROUNER:  That is the headline, your Honor.  And

17   we've been down this path before with another non-party witness

18   in the form of Barbara McCarthy, and we sort of have a rhythm

19   in this case in terms of defendants asking for materials from

20   me concerning communications with non-parties and

21   simultaneously subpoenaing and obtaining those materials from

22   the third party.

23          So I'll take your Honor's observation and my

24   indication of what I'm reading in the email that the materials

25   have been --

1          THE COURT:  All right.  I think that, if the

2     materials -- it seems to me unlikely that Ms. Perez has not

3     provided the full panoply, but if there's something she's held

4     out -- do you know if she's held anything out?

5          MR. KROUNER:  I'm not aware of -- I am not aware of

6     the assertion of any privilege on the part of Ms. Perez or any

7     withholding of materials that have been requested of her

8     pursuant to Nyack College's --

9          THE COURT:  You're copied on what she's sent to

10    Mr. Smith?

11         MR. KROUNER:  Yes.

12         THE COURT:  So you can go in there and figure out

13    whether she left anything out.

14         MR. KROUNER:  We have that capacity.

15         THE COURT:  But I think, in light of this disclosure

16    by the witness, I am unwilling to find any privilege associated

17    with these communications, and at that point it would become a

18    selective waiver problem and so forth, so if there's anything

19    that's left out, you should give it to Ms. Bochner.

20    Understood?

21         MR. KROUNER:  Understood, your Honor.

22         MS. BOCHNER:  Your Honor, just to add on this point

23    as far as non-party disclosures, we also served upon

24    plaintiffs' counsel which we -- I believe they requested

25    additional time to respond by next week.  We served a second

Angela O'Donnell, RPR, 914-390-4025

1   demand for information which also requested emails,

2   communications back and forth between plaintiffs' counsel and

3   various of the other non-parties.

4          Yes, we also served subpoenas on these individuals.

5   We have yet to receive any responses to these subpoenas which

6   were served over 30 days ago.  So, again, the same issue would

7   come up that these are not entitled to attorney -- presumably

8   we're going to be provided with a privilege log regarding these

9   communications from Mr. Krouner's office that look similar to

10  the privilege log from Allyssa Perez that says attorney work

11  product doctrine.  And in that matter, we have not yet been

12  provided nor have we received any indication that we will be

13  provided with information in response to the subpoena.  So we

14  would again have to argue that there is no attorney work

15  product for these individuals for documents that may have be

16  sent by non-parties to Mr. Krouner related to the lawsuit

17  related to testimony, preparation for testimony.

18         Again, this is premature because we've yet to receive

19  a response from either Mr. Krouner's office or response to

20  these well overdue subpoenas.

21         THE COURT:  Who are these people?

22         MS. BOCHNER:  Barbara McCarthy was a non-party, the

23  mother of a non-party; K.L.; George Richards, the parents of

24  one of the plaintiffs, M. Doe; Glenn Manger, the parents of one

25  of the -- A. Doe; Doug Yano, the father of K. Doe --

Angela O'Donnell, RPR, 914-390-4025

1          THE COURT:  Well, you know, this is becoming more

2    complicated because, frankly, I could pretty easily see a

3    distinction between a parent of a plaintiff who might very well

4    have a common interest with the plaintiff as distinguished from

5    somebody like Ms. Perez who seems to be a stranger to this

6    controversy.

7          MS. BOCHNER:  Understood, your Honor.  So we have two

8    individuals who are not, who can't conceivably have a common

9    interest, K.L., who's a non-party, she was a student at Nyack

10   College, she has no claims in this lawsuit, and Barbara

11   McCarthy, whose daughter was a student at Nyack College, not a

12   party to the lawsuit who testified --

13         THE COURT:  Right, although Mr. Krouner explained to

14   us last time we were here that with respect to Ms. McCarthy, if

15   I recall correctly -- and you'll correct me if I'm wrong,

16   Mr. Krouner -- there was at least preliminary discussion of

17   Ms. McCarthy or her daughter who attended Nyack College

18   becoming a plaintiff or something.

19         MR. KROUNER:  Your Honor's recollection is correct.

20         MS. BOCHNER:  That's correct, your Honor, but

21   Ms. McCarthy's daughter is not a plaintiff.  As far as we're

22   aware, there are no actions, and Ms. McCarthy's daughter is an

23   adult, therefore, any potential lawsuit by her mother we

24   question what kind of lawsuit that would be and whether --

25         THE COURT:  Again --

Angela O'Donnell, RPR, 914-390-4025

1        MS. BOCHNER:  -- what kind of basis there is.

2        THE COURT:  Again, I have to look at the cases, but

3   it would be easy for me to see how a parent/daughter might

4   create some kind of a common interest that would not be present

5   in a different sort of relationship.

6        In any event, it's helpful to preview these issues

7   for me.  In light of the fact that we're here talking about

8   them, maybe I can rule on the papers, but I'm not going to rule

9   on it in an advisory way, because you're telling me that you

10  haven't gotten responses yet, you haven't seen a privilege log

11  and you don't know whether these witnesses are going to

12  unilaterally respond to these subpoenas.

13       MS. BOCHNER:  That's correct.

14       THE COURT:  So I think what you're going to have to

15  do is write to me if you need a ruling.

16       Mr. Krouner or Ms. Yanefski, is there anything else

17  you want to say on this topic?

18       MR. KROUNER:  Just one point of clarification.  The

19  information is slightly better that I believe plaintiffs'

20  formal response to those demands, which Ms. Bochner was

21  gracious enough to extend, was met yesterday by our office, so

22  she should at least have our formal responses.

23       THE COURT:  All right, so you'll let me know.

24       Mr. Krouner, you assert a work product privilege; do

25  you acknowledge that that is somewhat intentioned with Judge

Angela O'Donnell, RPR, 914-390-4025

1   Rakoff's opinion in this *Gupta* case?

2            MR. KROUNER:  I must confess I'm not familiar with

3   Judge Rakoff's decision.

4            THE COURT:  Okay, this is a decision that defense

5   counsel discussed at some length in her letters.  I don't know

6   if counsel --

7            MR. KROUNER:  I'm not prepared to speak to that.

8            THE COURT:  Okay.  All right.  So I will await

9   further information on that.  I will hear from counsel in a

10  week's time filling me in on the record with regard to requests

11  and responses.

12           With regard to these emails, I usually try to rule on

13  these things from the bench, but it seems to me like I don't

14  have enough information to do so, so I'm going to reserve.

15           Anything else we can productively talk about today?

16           MS. BOCHNER:  Your Honor, just checking in on the

17  status of Mr. Krouner's motion for leave to amend because in

18  light -- if it's going to produce or provide additional

19  depositions that are necessary, we're obviously storming

20  forward doing IMEs and expert exchange --

21           THE COURT:  Plaintiffs' counsel has assured me that

22  plaintiff will not be seeking any additional discovery on the

23  basis of the amendment if granted.  Are you telling me that --

24           MS. BOCHNER:  Correct, which we've set forth in our

25  opposition papers that we may need additional depositions of

1   the plaintiffs because the damages issue and specifically how

2   they were damaged by these new claims against Kirsten

3   Lambertson was not at all delved into.  All of the damages

4   revolved around Kurt Ludwigsen's conduct and none of it related

5   to Ms. Lambertson's conduct.

6          THE COURT:  You know, you're asking me, I'll get to

7   it when I get to it.

8          MS. BOCHNER:  I understand.

9          THE COURT:  If we have to -- if that means other

10  shoes drop, we'll deal with that.  We'll cross that bridge when

11  we come to it.

12         You're on your feet, Ms. Yanefski.

13         MS. YANEFSKI:  I am.  If your Honor is done with

14  Ms. Bochner on this topic, I just didn't want to miss the

15  opportunity to bring up another topic.

16         THE COURT:  I'm listening.

17         MS. YANEFSKI:  So we have two depositions in this

18  action that haven't occurred, all the others have occurred.

19  The first is schedule for tomorrow, David Julien, that should

20  go as planned, but the second you'll recall that we had a

21  subpoena for the deposition of Brittany Sturtevant --

22         THE COURT:  A/k/a Allie Haze you actually heard about

23  so much.

24         MS. YANEFSKI:  Right, in Nevada, and our law clerk

25  just spoke yesterday with the clerk of the court in the

1   District of Nevada who said that they only had ancillary

2   jurisdiction but that they would not be able to begin an

3   ancillary action or that we wouldn't be able to begin an

4   ancillary action merely to compel the attendance of a witness

5   at a deposition.  So The court's advice from that federal court

6   in Nevada was that we should make the motion to compel here in

7   the Southern District, and then this court could request that

8   that motion be transferred to the District Court in Nevada.

9           So if your Honor is amenable, if that comports with

10  the procedures of the Southern District, we anticipate making

11  this motion because the trail of communications has gone cold

12  as it were with Ms. Sturtevant, who has not responded to any of

13  our phone calls, the latest being February 8th.

14          THE COURT:  First of all, I take it there's no --

15  defendants have no position on this particular -- you don't

16  have a dog in this hunt.

17          MR. BURKE:  I don't know how relevant -- well,

18  they -- they can choose who they want to depose, your Honor.

19  It seems they're going through great pains to try to depose

20  somebody in Vegas but --

21          THE COURT:  Well, this is somebody who may not be

22  available at trial, and you know whose name has come up --

23          MR. BURKE:  But then they're not going to be able to

24  get the non-party testimony in anyhow.  That's a different

25  issue at a different time.

1        THE COURT:  That's a different issue at a different

2   time.

3        What I really was trying to suss out is any motion

4   that they make to compel Ms. Sturtevant to appear for a

5   deposition is going to be unopposed by defense counsel; is that

6   a fair statement?

7        MR. BURKE:  Yes, so long as -- and they've been

8   gracious enough, talking about scheduling.

9        THE COURT:  Right.

10        MR. BURKE:  So that, if it ultimately comes to that,

11   that we'll work out when those dates are.

12        THE COURT:  Okay.  So make the motion and include a

13   proposed order and as much guidance as you can give me about

14   what you think I ought to do with it once I enter it, because

15   this is taking us into *terra incognita* here.

16        MS. YANEFSKI:  Thank you, your Honor.

17        THE COURT:  Okay?

18        MS. YANEFSKI:  So with regard to our outstanding

19   discovery demands, I just have a few points.  On -- for

20   defendant Ludwigsen, there are two issues, one of which

21   Mr. Krouner conferred with Mr. Burke just prior to commencing

22   today, which was we had requested an authorization for

23   Mr. Ludwigsen's military file.  Mr. Burke assures us that that

24   will be in our possession imminently, so I hope that he is

25   correct about that.

1    The second issue, which it seems as if plaintiffs'

2    counsel and defendants' counsel have different recollections,

3    is regarding Mr. Ludwigsen's criminal file where we requested

4    in our discovery demand, second discovery demands, the entirety

5    of Mr. Ludwigsen's, read the language, all documents submitted

6    by or on behalf of defendant Ludwigsen in connection with his

7    sentencing in *People v Ludwigsen*, including without limitation

8    to evaluation reports created by Charles Flinton MD from San

9    Francisco Forensic Institute, the interface of psychology and

10   law, dated March 1, 2016 and March 13, 2016 respectively.

11        Mr. Burke has provided us, as of December 21st, with

12   a copy of the forensic psychiatric report for Mr. Ludwigsen.

13   He's not provided us with anything else, and we believe that we

14   are still entitled to any criminal records that would be in

15   possession of Mr. Burke or Mr. Ludwigsen or Mr. Ludwigsen's

16   criminal attorney.  That was all contemplated in our request.

17        THE COURT:  Like what?

18        MS. YANEFSKI:  Anything submitted on his behalf to

19   the criminal court, so any motion papers, anything advocating

20   on his behalf.  It's comprehensive, and it certainly was not

21   limited to the forensic psychiatric report, which Mr. Burke

22   seems to believe that it was.

23        MR. BURKE:  I just followed their demand, your Honor;

24   anything that was submitted during the sentencing.  Everything

25   else is publicly available.  The issue that was addressed, and

1   we had a conference a long time ago over this, was, as far as

2   what was submitted to probation, and this was the issue as to

3   the forensic report, because everything else was publicly

4   available, and then it was narrowed down to, I must produce the

5   forensic reports that were submitted to probation on behalf of

6   Mr. Ludwigsen, and I've complied with that.

7          So now to, at the eleventh hour, broaden their demand

8   as to what they're claiming they believe they're entitled to

9   was not what was addressed previously at a prior conference and

10  I've complied with everything that was obligated of my client

11  to turn over by way of the forensic reports that were submitted

12  to probation at the time of sentencing.

13         THE COURT:  My notes, my notes of our conference on

14  August 18, 2017, which was, by my count, in person conference

15  number three, in relation to discovery only read as follows:

16  If they were submitted to criminal court in connection with

17  sentencing, they are relevant.  If counsel has them, they must

18  be turned over.

19         You have some basis for thinking there's something

20  else that falls within that that they haven't given you?

21         MS. YANEFSKI:  Well the turn there is that Mr. Burke

22  hasn't said that this is -- he hasn't represented to us via his

23  letter enclosing the psychiatric report or in any other form

24  that this is the entirety of the criminal file submitted on

25  Mr. Ludwigsen's behalf for sentencing.  He's just told us that

Angela O'Donnell, RPR, 914-390-4025

1    he thinks all we asked for is the forensic psychiatric report,

2    and I think the distinction is important.

3           MR. BURKE:  Your Honor, we dealt with this in August

4    just based -- and my notes are similar to the Court's as to

5    what was at issue, and what was issue were these forensic --

6           THE COURT:  It seems like we were talking about some

7    kind of psychological or psychiatric records, which sounds to

8    me like it's this forensic report that you're talking about.

9           MR. BURKE:  Right, which they got in September.

10          THE COURT:  So I'm not understanding what it is that

11    you think he's not giving to you.

12          MS. YANEFSKI:  Any other document submitted in

13    connection with sentencing.  He hasn't -- he's not saying that

14    this is all that there was.

15          THE COURT:  Is there some sort of -- you know, I used

16    to do this for a living.

17          MR. BURKE:  Judge, I mean, Judge --

18          THE COURT:  Typically there's some kind of unitary

19    submission that goes to the judge.

20          MR. BURKE:  You know, to be honest, if there was a

21    sentencing submission that was made on behalf of his defense

22    counsel there, again, it would be something that is publicly

23    available, so what was being addressed in August was what

24    wasn't publicly available that was in the possession of the

25    Department of Probation and the issue of whether that would be

Angela O'Donnell, RPR, 914-390-4025

1    discoverable or not.  So, never before had there been any issue

2    of well what else was submitted to the court that is otherwise

3    publicly available.

4           So if they're saying I've got to go to the docket and

5    say here's what's been publicly provided to the court, I can do

6    that as well as they can.

7           THE COURT:  This was a --

8           MR. BURKE:  It's an electronic --

9           THE COURT:  This is a public docket; yes?

10          MR. BURKE:  Yes.

11          THE COURT:  It's not sealed or anything because --

12          MR. BURKE:  No.

13          MS. YANEFSKI:  Right.  There may be something sealed

14   because of the sex nature of the crimes.

15          THE COURT:  Well wouldn't the docket reflect that

16   they were sealed submissions?  Plus, if the psychiatric report

17   wasn't sealed, I don't know what would be.

18          MR. BURKE:  That was the only thing that was at issue

19   as far as sealing -- not publicly available, because it was

20   submitted to probation.  Probation had it within their files

21   but it was not maintained in the public's file because of the

22   sensitive nature that it was a psychiatric report.  That was

23   what was teed up in August.  That's what we addressed.  There

24   was never any follow-up --

25          THE COURT:  Look, Mr. Burke --

Angela O'Donnell, RPR, 914-390-4025

1        MR. BURKE:  I'll get them --

2        THE COURT:  -- if there was anything that was

3   submitted to the court in connection with Mr. Ludwigsen's

4   sentencing I think is relevant because somebody thought it was

5   important at the time, if it's on the docket, plaintiffs can

6   find it, but if you are in possession of undocketed submissions

7   other than the psychiatric report, it should go to plaintiffs'

8   counsel.  That's the end of that.

9        MS. YANEFSKI:  Thank you, your Honor.

10        THE COURT:  All right?  If there is nothing --

11        MR. BURKE:  Just one.

12        THE COURT:  You've got something there?

13        MR. BURKE:  I didn't want to pass an opportunity --

14        MS. YANEFSKI:  I wasn't done yet either.

15        MR. BURKE:  Oh, I'm sorry.

16        THE COURT:  That's all right.

17        MR. BURKE:  Your Honor, just so there's clarification

18   now after the August 1, which we thought we had some clarity,

19   I'll see what's been publicly submitted, and if there was

20   something that was submitted that's not publicly filed, I'll

21   endeavor to find out what that could possibly be, but from

22   everything that I understood the only issue is that, I'll now

23   go back because that wasn't --

24        THE COURT:  Often there might be a letter saying,

25   your Honor, in connection with sentencing, we're sending you,

 1   you know, this letter from his mother and this letter from this
 2   other person, you know, I don't know what there is.
 3           MR. BURKE:  Okay.
 4           THE COURT:  Sometimes --
 5           MR. BURKE:  Yes.
 6           THE COURT:  -- in the state courts there's more
 7   informality and people do things verbally.
 8           MS. YANEFSKI:  So, your Honor, I had one more issue,
 9   which is that we understand the defendants are serving requests
10   for documents on non-parties whether via subpoena as in
11   non-party witness, Ms. Perez, or via authorizations on
12   plaintiffs' treating physicians, and it's come to our attention
13   that defendants are being sent some of these records.  We know
14   for instance K. Doe's psychiatrist has sent records to the
15   defendants and defendants haven't produced any of those
16   materials to us which they are required to do under
17   supplementation.
18           THE COURT:  This is --
19           MS. BOCHNER:  We have no problem providing --
20           THE COURT:  Yes, I mean, that's --
21           MS. BOCHNER:  We've recently received something, but
22   it works the same way, we're still chasing down doctors for
23   incomplete records that they're providing with us.  So I know
24   that plaintiffs recently completely re-served supplemental Rule
25   26.

1          THE COURT:  Look we're all on the same page about

2     this.

3          MS. BOCHNER:  So the same, if you can serve us with

4     any new medical records --

5          MS. YANEFSKI:  Right.  Of course.

6          MS. BOCHNER:  -- that are in your possession, we'll

7     serve you with whatever we've gotten.

8          THE COURT:  These kinds of things that are obtained

9     by subpoena are supposed to be shared, and I will rely on

10    counsel to do that.

11         MS. YANEFSKI:  That's it, your Honor.

12         THE COURT:  Okay.

13         Mr. Burke, back over to you.

14         MR. BURKE:  Just a -- there's an ongoing dispute as

15    to the scope of the social media that -- we addressed it, we

16    got Mr. Krouner's position of we're working on -- and we got

17    those responses on the date that the court had set; however,

18    it's still limiting the social media to just communications

19    between players and related to softball and that's not what the

20    demands related to, the demand's far broader than that for all

21    social media during the timeframe of the 2014/2015 season and

22    beyond because of the claims of the damages that they're saying

23    that they've removed themselves from their friends, their

24    family, and aren't the same as a result of what had gone on

25    back in '14 and '15.  Those materials have not been produced.

1   They're taking a position that they've narrowed their answer

2   to, yes, you've asked for everything, but we're only giving you

3   this.

4           So we're still back to -- it's similar to what had

5   gone on with the emails but nonetheless, we have this issue

6   here on the social media front where we've asked for everything

7   and there's actually now been a change in the -- not change but

8   a reaffirmation of the defendants' position on the Court of

9   Appeals decision that just came down last week from the State

10  of New York as far as the discoverability of social media when

11  there is at issue the plaintiffs' condition or claimed

12  condition and a change of that condition as a result of the

13  alleged conduct.

14          So we're still in this frame of we make a broad

15  demand, we get told they're working on it, they give us the

16  response and they narrow their response beyond what the demand

17  is.

18          So I can do one of two things, I can tee that up with

19  your Honor for the 28th as well in a letter --

20          THE COURT:  I think that's what you should do.

21          MR. BURKE:  I think that that's --

22          THE COURT:  I think that when you were here in

23  January you told me that plaintiffs had not responded,

24  plaintiffs have agreed to supplement.  Plaintiffs agreed to

25  provide all social media from 2014 to the present without

Angela O'Donnell, RPR, 914-390-4025

1  limitation and notwithstanding plaintiffs' objections to

2  relevance.

3        MR. BURKE:  And that wasn't done.

4        MS. BOCHNER:  Your Honor, on January 19th we did

5  receive the responses, as the Court ordered.  The issue, I

6  think, is Facebook messages.  So the demands may have been

7  vague as far as Facebook communications.  There are Facebook

8  posts.  There are Facebook private messages.  There are

9  Facebook chats.  And it seems that plaintiffs are taking the

10  stance that we are not entitled to the Facebook messages from

11  2014 to the present.

12        Mr. Burke and our office both sent letters in

13  response to the January 19th submission and again argued that

14  we're entitled to the entirety of plaintiffs' Facebook

15  accounts, including messages.

16        MS. YANEFSKI:  Your Honor, if I may take the Court

17  through a timeline of how terms have been used in this case.

18        The simple fact is, the defendants have not -- or at

19  least defendant Ludwigsen never requested Facebook messages

20  from the plaintiffs beyond the scope of their messages to or

21  relating to defendant Ludwigsen.  And the terms social media

22  has been used in connection with social media posts which have

23  been a different creature throughout this action until one turn

24  of phrase by Mr. Burke in a letter dated December 21 just a

25  couple of weeks before Mr. Krouner made his representation he

1   would serve all social media at this conference.

2          So, in the 18 months of this case, August of 2016,

3   defendant Ludwigsen's first request to produce to plaintiffs

4   his request number five is any and all communications you have

5   sent or received that relate in any way to defendant including

6   all text messages and Facebook messages to, from or about

7   defendant.

8          In that December of 2016 second request to produce

9   there's a different request; any and all of plaintiffs' social

10  media posts from January 1st, 2014 to the present.

11         February 17, 2017 Mr. Burke sent our office a

12  deficiency letter and it lists in completely unrelated

13  subheadings separately asking for production of social media

14  from 1/1/2014 through the present, that's the first unnumbered

15  subheading, and then down at the third unnumbered subheading is

16  for all communications including Facebook messages.  Same

17  thing, and deficiency letter June 2017 --

18         THE COURT:  All communications.

19         MS. YANEFSKI:  All communications, including Facebook

20  messages relating to Ludwigsen.

21         THE COURT:  Okay.

22         MS. YANEFSKI:  Sorry.  And June 28, 2017 another

23  deficiency letter, it's same in substance as the February

24  letter, subheading four, social media posts.  Subheading seven

25  is communications, including Facebook messages relating to

1   Ludwigsen.

2            And then July 12th of last year Mr. Burke wrote your

3   Honor, and this letter to the Court again has under subheading

4   five, social media posts, that's the term, from January 2014 to

5   the present, and then under another subheading is

6   communications, including Facebook messages relating to Kurt

7   Ludwigsen.

8            November 16, 2017, we get another deficiency letter

9   from Mr. Burke, who says I want to follow up on outstanding

10   discovery items in accordance with your Honor's order during

11   the August 18th conference.  We are still waiting on

12   plaintiffs' social media posts from June 2014 to the present as

13   well as all communications with or about Mr. Ludwigsen.

14            And then for the first time on December 21st,

15   Mr. Burke writes a deficiency letter to our office where

16   suddenly he's talking about Facebook messages in connection

17   with social media and not in connection with communications, so

18   he says, second, as you know, we have demanded, one, all of

19   plaintiffs' social media posts and messages from June 2014 to

20   the present and, two, all communications with or about Kurt

21   Ludwigsen.  And he says it's been over a year since we first

22   made this request.  So that's not true, because it had not been

23   over a year since he made that request.  He was changing his

24   request in his letter.

25            THE COURT:  In other words, the new -- what's new in

Angela O'Donnell, RPR, 914-390-4025

1    that December request is a request for Facebook messaging --

2          MS. YANEFSKI:  Correct.

3          THE COURT:  -- not related to Mr. Ludwigsen.

4          MS. YANEFSKI:  Right.  For all Facebook messaging.

5    And using the term social media in conjunction with Facebook

6    messages for the first time as distinct from social media was

7    posts, and Facebook messages were communications, and now he's

8    conflated the two.  And so that was when Mr. Krouner said to

9    your Honor in January that plaintiffs would provide all social

10   media.  We're going to an 18-month history of the case where

11   social media means social media posts, and we provided that to

12   Mr. Burke.

13         So, where he says that he had a demand for all of our

14   Facebook messages, that's not true.  We provided the relevant

15   Facebook messages that he demanded.

16         THE COURT:  Well, he's demanded them now.

17         MS. YANEFSKI:  But he's demanded them after 18 months

18   of discovery, and we would argue that they're not relevant and

19   where Mr. Burke cites to Court of Appeals law that, you know,

20   certain social media is discoverable where the plaintiff claims

21   certain damages, that is not an unqualified law, it's not an

22   unqualified standard, and you know, there are courts in this

23   circuit that have said that the -- if I may -- plaintiffs'

24   entire social networking account is not necessarily relevant

25   because he or she is seeking emotional distress damages.

1    That's in the Western District.  Eastern District, emotional

2    distress claims does not warrant disclosure of all Facebook

3    posts, *Silva versus Dick's Sporting Goods*.

4          THE COURT:  Just so I understand, and I will tell

5    everyone, I'm not on Facebook, so -- although I've issued

6    warrants to them many times, I have a somewhat primitive

7    understanding here, but Facebook posts, as I understand it, and

8    I just want to make sure we're using the same terminology here,

9    refers to something that is posted to the world or at least to

10    a large community of recipients.

11          MS. YANEFSKI:  That's correct.

12          THE COURT:  Whereas Facebook messaging is more like

13    emailing --

14          MS. YANEFSKI:  That's correct.

15          THE COURT:  -- that's addressed to a particular

16    recipient.

17          MS. YANEFSKI:  Right, and subject to the same

18    relevance law in terms of production and discovery that email

19    would be.

20          THE COURT:  So, Mr. Burke, why isn't a demand now for

21    all Facebook messaging similar to a demand for all emails you

22    sent to anybody for any purpose over this period of time or all

23    letters you wrote or all communications of any kind whatsoever,

24    which is almost always going to be an overbroad request?

25          MR. BURKE:  Well, it would be, your Honor, with

1   certain caveats.  I mean, if you have a plaintiff who's

2   claiming that they are not able -- that they've withdrawn from

3   their friends and their family as far as their daily life

4   activities because of what went on here, then I believe it

5   would be, and I think that there's a strong position that the

6   information before then to show what their social media

7   communications were like, and then during and after what those

8   communications are like, to show if, in fact, there actually

9   had been some kind of damage of withdrawn -- of them actually

10  being withdrawn or did they continue to live their lives as

11  they did before.

12          So to say that it would be overly broad, we narrowed

13  it to the beginning, I didn't ask for the prior, I asked for

14  during the time of and after, so I could see what their social

15  media and posts were like, I don't have the timeline that she's

16  put together as far as my demands.

17          THE COURT:  You're going to get the posts, if you

18  haven't already gotten them.

19          MR. BURKE:  I haven't gotten the messenger.

20          THE COURT:  Right.

21          MR. BURKE:  Right.  I supposedly got the posts, but

22  what we had was, we were here in January where there was no,

23  hey, look, they're asking for everything and we're only going

24  to give them this.

25          THE COURT:  The problem here, Mr. Burke, is that I

1    think what we talked about in January was social media --

2            MR. BURKE:  Right.

3            THE COURT:  - without drawing the distinctions that

4    are now being drawn.

5            MR. BURKE:  And, you know, in fairness, your Honor,

6    to say now, well, it's Facebook but it's the messaging and not

7    the posts, we're talking about social media which incorporated

8    Facebook.  I didn't say I just wanted this, and they didn't say

9    you're only going to get that.  They said you're going to get

10   the Facebook social media irrespective of -- irrespective of

11   the relevancy arguments that he otherwise would raise.  He said

12   he'd give us that, we didn't get that.  He decided to then just

13   say, I'm not giving you the messages, I'm just going to give

14   you the posts.

15           And then there's issues, there's further issues as to

16   are we getting the posts that were publicly made versus the

17   ones that were privately made and those things --

18           THE COURT:  Well that we can find out.

19           MS. YANEFSKI:  We provided all of the public and

20   private posts.  I don't recall -- plaintiffs did not make any

21   sort of objections or withhold anything based on grounds of

22   privacy with regards to the posts as distinct from the

23   messages.

24           MR. BURKE:  The other thing, too, as far as, you

25   know, the demand was made in December, if the demand that

1  they're saying now is the one for the first time, which I don't
2  believe is the case because I've been -- she points to it, a
3  bullet point up here and a bullet point down there, and says
4  therefore they must be conflated and related.  I don't know, I
5  don't have all those letters in front of me to go through, no,
6  Judge, because all I can tell you is that the continued
7  responses we got were deficient, and I continue to go back and
8  say, hey, look, we're looking for all of this, we've been
9  asking for it for a long time now and you continue to give us
10  dribs and drabs, you say you're working on it, you demanded all
11  these things from us and the simple me requesting Facebook
12  access, Facebook messages, Facebook postings under the broader
13  umbrella of Facebook social media that you're not giving us
14  access to that, we're entitled to.  And they didn't raise that
15  objection of saying we're only going to give you portions but
16  not others.

17          So there's obviously something here where there are
18  communications, messaging back and forth, whether it be between
19  plaintiffs, between someone that they don't want us to have
20  access to.

21          And just to get back to the initial preservation
22  letters and all that, this was something that was covered under
23  that broader umbrella, and now they're the ones that are
24  parsing saying, oh, well, you didn't really ask for the posts,
25  you asked for -- I mean, you asked for the posts, but you

1  didn't ask for the messages.  They're all under the broader

2  social media context of ways of communicating.

3       THE COURT:  Well, but there's a tremendous difference

4  between public posts, which are available, as I understand it,

5  to anybody, or anybody that's on Facebook, and private posts

6  which go to the community of friends, if that's the

7  terminology, but are posted to a community somehow versus

8  private one-to-one communications which it doesn't really

9  matter whether it's on Facebook or email or text or anything

10  else, and so I do think it is a logical distinction for

11  plaintiffs to draw and, frankly, I find it kind of remarkable

12  that you think it's okay to just say, you have to give me all

13  your communications without any restriction on subject matter

14  or who you're communicating with because that really sounds

15  like fishing.

16       MR. BURKE:  Your Honor, it's not in a sense that

17  we've limited the scope.  And by the way, when you have --

18       THE COURT:  You've limited the scope to?

19       MR. BURKE:  To the beginning of -- I didn't ask for

20  prior.

21       THE COURT:  You've limited the period of time that

22  you made the request for.

23       MR. BURKE:  Correct.  Limiting the scope by way of a

24  temporal limitation; however, when you say that -- when you

25  have testimony from plaintiffs who are saying that their

1    everyday activities have been affected as a result of this then

2    I believe that -- and they're very active on social media

3    communicating, whether it be texting, that would be

4    discoverable, your Honor, whether it's going to be --

5              THE COURT:  Would you be able to tap their phones?

6              MR. BURKE:  Would I be able to tap their phones?  No,

7    but I should be able to get their phone records to show who

8    they actually are communicating with.  To say, hey, look, if

9    she's saying that I was withdrawn, I wasn't speaking to my

10   family, and there shows that there's 15 phone calls to her

11   mother, that's something that I'd be able to confront a person

12   about.  And that should be something I'd be allowed to

13   discover.  So to say that I should be limited and not be able

14   to challenge what their claims of their affect on their daily

15   life activities which, for these young girls, social media was

16   a big part of it and so were communications through Facebook,

17   that those things are all discoverable for the timeframes of

18   what we're talking about.

19             THE COURT:  Have you got any authority for this

20   proposition that you can just look at -- demand to look at all

21   of somebody's communications which might include --

22             MS. BOCHNER:  We do, your Honor.  Hold on one second.

23             MR. BURKE:  And we're just looking to --

24             MS. BOCHNER:  It's in a letter that we wrote to

25   plaintiffs' counsel on February 16th that my office did.

1          THE COURT:  Okay, I don't think I got that one.

2          MS. BOCHNER:  You did not.

3          MR. BURKE:  You did not, it's between the parties.

4          Your Honor, in looking at Ms. Bochner's letter, it

5     says, quoting this portion, says, "Particularly in claiming" --

6     "in claims involving personal injury, courts have found that

7     social media information may reflect the plaintiffs' emotional

8     or mental state or physical condition, activity, level of

9     employment, this litigation and injuries and damages claimed."

10    And that's citing *Sourdiff* --

11         THE COURT:  Social media information, I mean that's

12    kind of a broad term; isn't it?

13         MR. BURKE:  Well that's the thing that --

14         THE COURT:  I mean, you're getting some social media

15    information, just not the kind that you're now insisting on.

16         MR. BURKE:  Well, here it says, "More pointedly,

17    where a plaintiff puts her emotional well-being at issue,"

18    which they all have here, "by asserting claims of sexual

19    harassment," which they all have here, "courts typically find

20    that social media content is relevant because Facebook usage,"

21    and it doesn't limit it to posts versus messaging, it says,

22    "Facebook usage depicts a snapshot of the user's relationship,

23    state of mind at the time of the content of the postings."

24         So that's talking about postings, but also the

25    messaging I think, if it is something that is clearly --

1   they're claiming one thing of withdrawal, and I'm not

2   communicating with my family, I'm not communicating with my

3   boyfriend, it's affected my relationship with my friends, and

4   those messages belie that, these clearly discoverable in

5   allowing us to defend the claims that they're making.

6           So this is not a fishing expedition, Judge, based on

7   their claims, their claims of injury and damages, and the case

8   law that I cited, those two cases, one from the Southern

9   District, one from the Northern District within this circuit

10  clearly supports the position that that's discoverable.

11  Whether it's --

12          THE COURT:  Well, that some kind of social media

13  information is discoverable.  It's -- part of the problem is

14  that Facebook does everything now.  I've got news feeds, we've

15  got all kind of things.  To refer to it as social media is like

16  referring to written materials, which might include letters and

17  newspapers and books and menus and all sorts of things.  It's a

18  very broad classification.

19          MS. BOCHNER:  Your Honor, just to add to the cases

20  cited by Mr. Burke, the Court of Appeals, which is

21  understandably not federal court, recently came down with a

22  decision actually only last week in the case of *Forman v.*

23  *Henkin*, in which they did discuss specifically Facebook

24  messages and allowed for the discoverability of Facebook

25  messages when the plaintiff's emotional state and their being

Angela O'Donnell, RPR, 914-390-4025

1    withdrawn was put at issue.  I can give you the slip opinion

2    cite, is 2018 New York Slip Op 01015, and that was Justice

3    DiFiore in the Court of Appeals, and it specifically discusses

4    Facebook messages.

5              THE COURT:  In the context of --

6              MS. BOCHNER:  Of discoverability by defendants'

7    counsel that Facebook messages --

8              THE COURT:  Facebook messages with anyone at all not

9    restricted by subject matter or --

10             MS. BOCHNER:  Specific for a time period to discuss

11   the amount of communications.  There was an agreement in the

12   lower court that plaintiffs would turn over the amount of

13   characters was one thing that the courts, the lower courts,

14   contemplated, that characters in a message versus what was

15   actually said in the private message to be able to assess

16   whether somebody is having long conversations with friends

17   following --

18             THE COURT:  So they didn't order that the content be

19   divulged.

20             MS. BOCHNER:  In the end, once it went -- I

21   apologize, your Honor.

22             THE COURT:  You know, don't try to read it on your

23   screen, I'll read the case.

24             MS. YANEFSKI:  If I may, your Honor, looking over the

25   *Forman* case, which I was lucky enough to bring today and having

1    not read it in depth, I would just like to point out to your

2    Honor to be aware of when reading it that it seems like the

3    case is turning on a distinction between public facing posts

4    and private facing posts and doesn't touch specifically on the

5    issue of messaging as distinct from posting.

6              THE COURT:  All right, I'll read the case.  I'll give

7    you a ruling on that as well.

8              Anything else we need to do this afternoon?

9              MS. YANEFSKI:  I just wanted to update your Honor

10   with regards to settlement, that the parties have conferred and

11   there is no settlement at this time.

12             THE COURT:  There is no settlement --

13             MS. YANEFSKI:  Correct.

14             THE COURT:  -- at this time.

15             MS. YANEFSKI:  Wouldn't that be something.

16             MS. BOCHNER:  Your Honor, just to quickly address

17   that.  I know several conferences ago, I don't have the exact

18   date, I know the issue of plaintiffs' retainers was discussed,

19   and it was contemplated -- my office and Mr. Burke's office had

20   requested copies of plaintiffs' retainer agreements, and it was

21   decided that at this time plaintiffs would produce redacted

22   copies of the retainer agreement just showing the date;

23   however, your Honor left it open that, when the case comes

24   closer to trial, that the entire retainer agreement would

25   likely be discoverable in light of certain claims and their

1  involvement of attorneys fees as part of a damages claim.   In

2  these --

3          THE COURT:  Well, I mean, this would be, in other

4  words, attorneys fees wouldn't be assessed by the jury in this

5  case, right, they would be the subject of a separate fee

6  application --

7          MS. BOCHNER:  Correct.  However --

8          THE COURT:  -- that would be addressed to the Court

9  after plaintiffs -- in the event that plaintiffs obtained a

10 favorable verdict.

11         MS. BOCHNER:  Yes.  However, while settlement

12 discussions are taking place, part of plaintiffs' settlement

13 demand is not just monetary value for the plaintiffs, but he's

14 also looking to us for attorneys fees upward of six figures,

15 possibly higher.  We haven't been provided with any breakdown

16 of the attorneys fees, although we've asked.  Therefore, again,

17 I would renew that our demand for complete, unredacted retainer

18 agreements is now a ripe issue that plaintiffs should turn

19 over.  In the event that settlement discussions are able to

20 proceed, that this is something that's clearly at issue and

21 we're clearly entitled to if plaintiffs are seeking this high

22 number of attorneys fees.

23         MR. KROUNER:  Your Honor, respectfully, I think this

24 issue is moot and not ripe, as your Honor previously ruled when

25 the subject of retainer agreements was first put to the

Angela O'Donnell, RPR, 914-390-4025

1    Court --

2            THE COURT:  At that time there was an issue about

3    when plaintiffs' counsel had been retained; isn't that right?

4            MR. BURKE:  Yes.

5            MS. BOCHNER:  That was the issue, but the issue was

6    also for the retainer agreement.

7            MR. KROUNER:  In terms of the premise that

8    Ms. Bochner is making at this time as it relates to settlement,

9    without getting into the substance of the settlement discussion

10   with the Magistrate Judge or on an open record, the substance

11   of the conversation I had with Ms. Bochner in this courtroom

12   before your Honor took the bench was to the exact opposite,

13   that based on the demand, independent of requests for attorneys

14   fees, the defendants and their interested parties were not

15   interested in continuing any dialogue.

16           So I will accommodate Ms. Bochner if and when in good

17   faith she tells me that we have something to talk about, but I

18   understood before this conference began this afternoon, this

19   afternoon, that this issue is not ripe because they had no

20   desire to engage in any settlement dialogue.  So the issue of

21   tagging a settlement negotiation to our retainer agreements and

22   lodestars is just the opposite of what she told me earlier.

23           THE COURT:  Well, you know, in any event, the Court

24   obviously wants to encourage settlement discussions and assist

25   in any way, but whether plaintiff counsel wants to informally

                    Angela O'Donnell, RPR, 914-390-4025

1    share materials or summaries or some kind of information about

2    what their fee demand is likely to look at, they're free to do

3    that, but I'm not sure that I would be inclined to make them do

4    it.

5            And, frankly, I'm not sure what the retainer would --

6    what light the retainer agreement would shed on that discussion

7    because if the -- if this goes to a fee application, it's going

8    to be based on their billable hours and their effort to justify

9    the number of hours expended and the hourly fee that is

10   associated with that and you know that's a whole process.  So

11   I'm not sure that I want to inject myself into this further.

12   All right.

13           Do we have another conference scheduled in this case?

14           MR. KROUNER:  Not at this time, your Honor.

15           THE COURT:  Then we should put on a phone conference

16   in 30 days.

17           THE CLERK:  Just want to be sure there's nothing else

18   on.

19           THE COURT:  That will be number 21.

20           THE CLERK:  We could do March 21st at 10:00 o'clock.

21           MR. KROUNER:  By telephone?

22           THE COURT:  Yes.  As always, unless we're overtaken

23   by events.  All right.

24           MR. KROUNER:  Thank you.

25           THE COURT:  Have a good afternoon, everybody.  I'll

1 look forward to your additional submissions.

2    MS. YANEFSKI:  Thank you, your Honor.

3    THE CLERK:  All rise.

4    (Proceedings concluded)

5 Certified to be a true and accurate

6 transcript of the digital electronic

7 recording to the best of my ability.

8 _____

9 U.S. District Court

10 Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Angela O'Donnell, RPR, 914-390-4025

MR. BURKE: [43] 3/1211/911/14
12/413/631/1631/2232/632/933/22
35/235/835/1635/1936/736/936/11
36/1736/2537/1037/1237/1437/16
38/238/439/1340/2041/2046/2446/18
46/2047/147/447/2349/1549/18
49/2250/550/2251/251/1251/1556/3
MR. KROUNER: [19] 3/43/711/16
23/1924/124/1525/425/1025/13
25/2027/1828/1729/129/655/2256/6
57/1357/2057/23
MS. BOCHNER: [71]
MS. YANEFSKI: [47] 6/96/126/19
7/167/1815/1315/2416/216/1016/24
17/618/219/419/2420/320/1520/25
22/930/1230/1630/2332/1532/17
33/1734/2035/1136/1237/837/13
38/739/439/1041/1542/1842/2144/1
44/344/1645/1045/1345/1647/18
53/2354/854/1254/1458/1
THE CLERK: [4] 2/1157/1657/19
58/2
THE COURT: [149]

**'**
'14 [1] 39/25
'15 [1] 39/25

**-**
---------------------------------
---x [2] 1/21/16
-against [1] 1/5

**0**
01015 [1] 53/2

**1**
1-10 [1] 1/14
1/1/2014 [1] 42/14
10 [1] 1/14
100 [1] 2/3
10004 [1] 2/7
10514 [1] 2/3
10924 [1] 2/11
10:00 o'clock [1] 57/20
11 [3] 21/1623/323/8
11:59 [1] 7/10
12th [1] 43/2
13 [1] 33/10
15 [2] 1/550/10
16 [1] 43/8
16th [1] 50/25
17 [3] 8/88/1042/11
18 [3] 34/1442/244/17
18-month [1] 44/10
18th [1] 43/11
190 [1] 5/24
19th [2] 41/441/13
1:30 p.m [1] 23/24
1st [1] 42/10

**2**
2014 [8] 13/1840/2541/1142/10
42/1443/443/1243/19
2014/2015 [3] 9/212/2539/21
2015 [3] 9/212/2539/21
2016 [4] 33/1033/1042/242/8
2017 [9] 3/248/88/1013/1834/14
42/1142/1742/2243/8
2018 [2] 1/1853/2
209 [1] 2/10
21 [3] 1/1841/2457/19
21st [2] 33/1143/1457/20

26 [6] 7/899/169/189/2015/1938/25
28 [1] 42/22
28th [1] 40/19

**3**
30 [2] 26/657/16

**4**
40 [1] 2/10

**5**
5th [1] 3/20

**7**
7822 [1] 1/5

**8**
8th [1] 31/13

**9**
93 [1] 2/3

**A**
A/k/a [1] 30/22
ability [1] 58/7
able [14] 11/2311/2516/431/231/3
31/2346/250/550/650/750/1150/13
53/1555/19
about [32] 10/1311/511/2013/13
13/2215/1215/1516/1216/1321/8
21/1328/729/1330/2232/832/13
32/2535/635/839/142/643/1343/16
43/2047/147/750/1250/1851/2456/2
56/1757/1
absence [1] 24/9
access [18] 4/94/154/165/25/3
5/1811/311/611/2411/2512/312/17
15/2116/417/1548/1248/1448/20
accessible [2] 7/37/4
accommodate [1] 56/16
accordance [1] 43/10
according [3] 4/89/159/18
account [2] 5/2244/24
accounts [6] 6/156/228/138/21
14/814/814/1041/15
accurate [1] 58/5
acknowledge [1] 28/25
acknowledged [1] 16/20
action [6] 15/1621/2230/1831/3
31/441/23
actions [2] 18/827/22
active [1] 50/2
activities [3] 46/450/150/15
activity [1] 51/5
actual [1] 19/22
actually [8] 18/630/2240/746/8
46/950/852/2253/15
add [2] 25/2252/19
additional [7] 10/2019/1625/25
29/1829/2229/2558/1
address [4] 5/1618/222/2354/16
addressed [7] 33/2534/935/23
36/2339/1545/1555/8
adds [1] 22/16
administration [1] 7/25
administrators [2] 15/2215/23
admit [1] 50/2
admits [1] 7/1
adult [1] 27/23
advice [1] 31/5
advisory [1] 28/9
advocating [1] 33/19
affect [1] 50/14
affected [4] 9/710/1550/152/3

after [10] 5/125/1312/1913/713/8
37/1844/1746/746/1455/9
afternoon [9] 3/93/123/133/15
23/2454/856/1856/1957/25
again [13] 15/2316/2417/322/16
26/626/1426/1827/2528/235/22
41/1343/355/16
against [2] 1/530/2
ago [3] 26/634/154/17
agreed [2] 40/2440/24
agreement [5] 53/1154/2254/24
56/657/6
agreements [4] 54/2055/1855/25
56/21
ahead [1] 4/20
al [2] 3/13/2
all [90]
alleged [1] 40/13
allegedly [1] 23/16
Allie [1] 30/22
allowed [2] 50/1252/24
allowing [1] 52/5
Allyssa [5] 20/220/321/621/17
26/10
Allysssa [3] 21/2022/423/21
almost [1] 45/24
alone [1] 15/20
along [2] 4/235/23
already [1] 46/18
also [8] 14/921/1725/2326/126/4
51/2455/1456/6
although [4] 16/1727/1345/555/16
always [2] 45/2457/22
am [3] 25/525/1630/13
amenable [1] 31/9
amend [1] 29/17
amended [1] 16/15
amendment [1] 29/23
amount [2] 53/1153/12
ancillary [3] 31/131/331/4
another [6] 24/1730/1542/2243/5
43/857/13
answer [3] 6/1316/1240/1
anticipate [1] 31/10
any [45] 4/35/176/37/28/1212/9
13/2514/114/414/714/1218/1719/14
24/725/625/625/1626/526/1227/23
28/629/2231/1232/333/1433/19
34/2335/1236/136/2438/1539/442/4
42/542/945/2245/2347/2049/13
50/1955/1556/1556/2056/2356/25
anybody [4] 24/845/2249/549/5
anyhow [1] 31/24
anymore [1] 17/15
anyone [2] 7/2553/8
anything [16] 13/1522/1625/4
25/1325/1828/1629/1533/1333/18
33/1933/2436/1137/247/2149/954/8
anywhere [1] 14/23
apart [2] 14/114/3
apologize [3] 8/1618/1153/21
apparently [1] 14/16
Appeals [4] 40/944/1952/2053/3
appear [1] 32/4
appearance [1] 3/3
appears [3] 22/2123/2123/24
application [2] 55/657/7
appreciate [1] 20/16
approximately [1] 5/24
are [71]
aren't [2] 13/939/24
argue [2] 26/1444/18
argued [1] 41/13
arguing [2] 14/724/13

## A

argument [3] 14/420/920/18
arguments [1] 47/11
around [1] 30/4
as [92]
Asia [1] 18/6
aside [3] 5/85/99/14
ask [6] 15/922/346/1348/2449/1 49/19
asked [13] 7/511/2112/212/14 20/1020/1135/140/240/646/1348/25 48/2555/16
asking [5] 24/1930/642/1346/23 48/9
assert [3] 21/2324/728/24
asserting [1] 51/18
assertion [25/6
assess [1] 53/15
assessed [1] 55/4
assist [1] 56/24
Assistant [1] 1/12
associate's [1] 24/4
associated [2] 25/1657/10
Assuming [1] 23/10
assured [1] 29/21
assures [1] 32/23
at [58] 3/244/186/156/227/27/4 7/229/1210/1111/111/711/1912/1 12/215/515/1417/1621/1323/21 25/1727/927/1127/1628/228/2229/5 30/331/531/2231/2532/134/734/9 34/1235/536/1837/540/1141/1842/1 42/1545/950/2050/2051/451/17 51/2353/153/854/1154/1454/21 55/2056/256/857/257/1457/20
Athletic [1] 1/10
attachment [1] 23/23
attendance [1] 31/4
attended [1] 27/17
attention [1] 38/12
attorney [15] 6/311/2114/215/10 18/118/419/721/1417/1622/622/23 26/726/1026/1433/16
attorney-client [4] 6/314/218/1 18/4
attorneys [9] 2/22/62/1055/155/4 55/1455/1655/2256/13
August [7] 14/1435/335/2336/23 37/1842/243/11
August 1 [1] 37/18
August 18 [1] 34/14
August 18th [1] 43/11
authority [1] 50/19
authorization [2] 12/332/22
authorizations [2] 12/912/10 12/1212/1538/11
available [8] 31/2233/2534/4 35/2335/2436/336/1949/4
Avenue [1] 2/3
await [1] 29/8
aware [5] 16/2525/525/527/2254/2

## B

back [20] 3/213/244/2410/1710/19 10/2214/1916/2117/620/1420/17 21/326/237/2339/1339/2540/448/7 48/1848/21
back-up [1] 14/19
backing [1] 7/14
Barbara [3] 24/1826/2227/10
barred [1] 15/20
based [8] 6/114/1521/2135/447/21 52/656/1357/8
basis [4] 5/228/129/2334/19

## B (col 2)

battery [1] 277
BCC [1] 18/14
be [76]
because [35] 6/36/229/411/612/14 13/1415/1716/1217/1023/2024/14 26/1827/228/929/1730/131/1132/14 34/336/1136/1436/1936/2137/4 37/2339/2243/2244/2546/448/248/6 49/1451/2056/1957/7
become [1] 25/17
becomes [1] 17/18
becoming [2] 27/127/18
been [27] 7/310/1210/1522/324/6 24/1724/2525/726/1132/736/136/5 37/1939/2540/741/641/1741/22 41/2343/2143/2246/948/248/850/1 55/1556/3
before [10] 6/515/720/424/1736/1 41/2546/646/1156/1256/18
began [2] 3/1956/18
begin [2] 31/231/3
beginning [2] 46/1349/19
behalf [7] 3/1433/633/1833/20 34/534/2535/21
being [11] 10/1915/1616/1416/20 31/1335/2338/1346/1047/451/17 52/25
belie [1] 52/4
believe [12] 5/147/69/424/525/24 28/1933/1333/2234/846/448/250/2
believed [1] 9/3
bench [2] 29/1356/12
best [1] 58/7
better [1] 28/19
between [15] 5/2413/1819/719/9 21/521/2022/426/227/339/1948/18 48/1949/451/354/3
beyond [3] 39/2240/1641/20
big [1] 50/16
billable [1] 57/8
BOCHNER [16] 2/83/93/226/147/1 8/516/2219/1520/121/325/1928/20 30/1456/856/1156/16
Bochner's [5] 3/1920/520/723/22 51/4
book [1] 17/25
books [1] 52/17
both [1] 41/12
boyfriend [1] 52/3
Brandon [1] 23/22
breakdown [1] 55/15
bridge [1] 30/10
briefing [1] 17/20
briefly [1] 15/14
bring [3] 15/1830/1553/25
Brittany [1] 30/21
broad [5] 8/2440/1446/1251/12 52/18
broaden [1] 34/7
broader [4] 39/2048/1248/2349/1
BROWN [1] 1/11
bullet [2] 48/348/3
burden [5] 9/139/159/1710/22 14/25
buried [1] 16/18
BURKE [25] 2/92/113/143/143/15 6/2332/2132/2333/1133/1533/21 34/2136/2539/1341/1241/2442/11 43/243/943/1544/1244/1945/20 46/2552/20
Burke's [1] 54/19
business [2] 18/1019/2
business-related [1] 19/2
but [48] 5/116/2510/110/713/10

## C

call [1] 20/12
call-in [1] 20/12
calls [2] 31/1350/10
came [7] 4/410/2410/2511/511/20 40/952/21
can [21] 13/1618/218/2320/19 22/1023/1425/1228/829/1531/18 32/1336/536/637/539/340/1840/18 47/1848/650/2053/1
can't [2] 20/1327/8
cannot [2] 21/2324/11
capacity [3] 1/71/725/14
care [1] 15/15
case [22] 3/176/29/2018/421/6 21/2123/2524/1929/141/1742/2 44/1048/252/752/2253/2353/2554/3 54/654/2355/557/13
cases [5] 18/618/1128/252/852/19
caveats [1] 46/1
CC [1] 18/14
certain [9] 3/245/198/1610/9 22/2244/2044/2146/154/25
certainly [1] 33/20
Certified [1] 58/5
cetera [1] 19/2
challenge [1] 50/14
change [3] 40/740/740/12
changing [1] 43/23
Chappaqua [1] 2/3
characters [2] 53/1353/14
Charles [1] 33/8
chasing [1] 38/22
chats [1] 41/9
checking [1] 29/16
choose [1] 31/18
chose [3] 5/199/1613/13
chosen [1] 8/17
chronological [1] 19/17
church [1] 9/10
circuit [3] 6/244/2352/9
cite [2] 18/453/2
cited [2] 52/852/20
cites [1] 44/19
citing [1] 51/10
Civ [1] 1/5
claim [3] 10/1522/1455/1
claimed [2] 40/1151/9
claiming [4] 34/846/251/552/1
claims [14] 9/522/227/1030/2 39/2244/2045/250/1451/651/1852/5 52/752/754/25
clarification [3] 20/1628/18 37/17
clarity [1] 37/18
classification [1] 52/18
clear [1] 6/1
clearly [8] 22/1722/2124/1451/25 52/452/1055/2055/21
clerk [2] 30/2430/25
client [10] 4/74/256/311/214/2 14/2118/118/419/734/10
clients [2] 16/818/16
closer [1] 54/24
closing [1] 4/4
Coach [1] 1/12

**C**

**cold** [1] 31/11
**collection** [1] 14/22
**college** [25] 1/81/101/111/121/14
1/142/63/106/16/227/17/248/13
8/2112/214/1515/617/2418/1318/24
19/824/1027/1027/1127/17
**College's** [2] 7/1125/8
**come** [6] 10/2217/1026/730/11
31/2238/12
**comes** [2] 32/1054/23
**commencing** [1] 32/21
**common** [4] 21/2527/427/828/4
**communicating** [7] 9/1249/249/14
50/350/852/252/2
**communication** [2] 18/1322/18
**communications** [34] 3/194/17/24
17/118/1418/2519/2224/824/20
25/1726/226/931/1139/1841/742/4
42/1642/1842/1942/2543/643/13
43/1743/2044/745/2346/746/848/18
49/849/1350/1650/2153/11
**community** [3] 45/1049/649/7
**compare** [1] 23/15
**compel** [3] 31/431/632/4
**complete** [4] 4/1223/1023/1255/17
**completely** [3] 24/1338/2442/12
**complexities** [2] 18/1018/12
**complicated** [1] 27/2
**complied** [2] 34/634/10
**comports** [1] 31/9
**comprehensive** [3] 14/2217/12
33/20
**conceivably** [1] 27/8
**concerning** [3] 22/224/924/20
**concluded** [1] 58/4
**condition** [4] 40/1140/1240/12
51/8
**conduct** [3] 30/430/540/13
**confer** [1] 19/20
**conference** [10] 3/1734/134/9
34/1334/1442/143/1156/1857/13
57/15
**conferences** [1] 54/17
**conferred** [2] 32/2154/10
**confess** [1] 29/2
**confidential** [2] 18/1824/15
**confirm** [1] 20/5
**conflated** [2] 44/848/4
**confront** [1] 50/11
**confusing** [1] 6/25
**conjunction** [1] 44/5
**connection** [8] 33/634/1635/13
37/337/2541/2243/1643/17
**consequential** [1] 16/18
**consequently** [1] 14/19
**contained** [2] 5/2317/25
**contemplated** [3] 33/1653/1454/19
**contend** [1] 18/5
**content** [3] 51/2051/2353/18
**context** [2] 49/253/5
**continue** [3] 46/1048/748/9
**continued** [3] 41/2515/948/6
**continuing** [1] 56/15
**contrast** [1] 4/10
**control** [4] 4/256/237/17/12
**controlling** [1] 18/5
**controversy** [1] 27/6
**conversation** [1] 56/11
**conversations** [1] 53/16
**Coordinator** [1] 1/14
**copied** [1] 25/9
**copies** [9] 4/104/114/1211/22
14/1823/1023/1254/2054/22

**copy** [2] 14/2033/12
**correct** [20] 7/198/1910/1711/13
12/2313/613/2115/927/1527/19
27/2028/1329/2432/2544/245/11
45/1449/2354/1355/7
**correctly** [1] 27/15
**correspondence** [3] 8/1217/621/9
**corresponding** [1] 9/12
**could** [10] 4/177/1512/814/22
20/1227/231/737/2146/1457/20
**couldn't** [1] 13/2
**counsel** [42] 3/33/74/225/256/7
8/179/2315/615/1116/1317/2117/22
19/1019/1021/521/1021/1121/12
21/1621/2522/522/2123/124/624/14
25/2426/229/529/629/929/2132/5
53/233/234/1735/2237/839/1050/25
53/756/356/25
**count** [2] 3/1734/14
**couple** [1] 41/25
**course** [3] 17/722/739/5
**court** [28] 1/110/2216/1516/16
30/2531/531/731/833/1934/1636/2
36/537/339/1740/841/541/1643/3
44/1952/2052/2153/353/1255/856/1/
56/2358/958/10
**court's** [2] 31/535/4
**Courthouse** [1] 1/17
**courtroom** [1] 56/11
**courts** [6] 38/644/2251/651/19
53/1353/13
**covered** [1] 48/22
**create** [2] 20/1228/4
**created** [1] 33/8
**creature** [1] 41/23
**crimes** [1] 36/14
**criminal** [6] 33/333/1433/1633/19
34/1634/24
**critical** [1] 17/8
**cross** [1] 30/10
**Crossing** [1] 18/6
**CS** [1] 1/5
**currently** [2] 3/2415/16
**custody** [3] 6/237/17/11
**customarily** [1] 5/12

**D**

**daily** [2] 46/350/14
**damage** [1] 46/9
**damaged** [1] 30/2
**damages** [11] 9/59/610/1430/130/3
39/2244/2144/2551/952/755/1
**data** [1] 14/18
**date** [5] 13/1613/2239/1754/18
54/22
**dated** [3] 2/2033/1041/24
**dates** [2] 13/1432/11
**daughter** [5] 27/1127/1727/21
27/2228/3
**DAVID** [1] 1/830/19
**DAVIE** [2] 1/101/12
**DAVISON** [1] 1/20
**days** [2] 26/657/16
**deal** [1] 30/10
**dealt** [1] 35/3
**December** [7] 12/633/1141/2442/8
43/1444/147/25
**December 21** [1] 41/24
**December 21st** [2] 33/1143/14
**decided** [2] 47/1254/21
**deciding** [1] 13/12
**decision** [5] 13/1129/329/440/9
52/22
**defend** [1] 52/5

**defendant** [11] 8/118/1415/21
24/1032/2033/641/1941/2142/342/5
42/7
**defendants** [27] 1/153/113/256/22
7/77/137/227/258/68/715/1816/4
16/516/717/217/1217/1918/420/11
24/1931/1538/938/1338/1538/15
41/1856/14
**defendants'** [6] 16/1324/624/14
33/240/853/6
**defense** [4] 17/2129/432/535/21
**deficiencies** [1] 16/14
**deficiency** [5] 42/1242/1742/23
43/843/15
**deficient** [1] 48/7
**defined** [2] 17/317/4
**delete** [2] 4/175/12
**deleted** [2] 5/105/15
**deletions** [1] 14/19
**delved** [1] 30/3
**demand** [25] 4/105/207/238/78/16
8/249/1411/713/326/133/433/23
34/740/1540/1644/1345/2045/21
47/2547/2550/2055/1355/1756/13
57/2
**demand's** [1] 39/20
**demanded** [17] 4/95/176/88/68/12
8/1812/1713/915/2116/2319/1721/5
43/1844/1544/1644/1748/10
**Demanding** [1] 8/13
**demands** [14] 4/198/88/118/14
16/1917/221/1122/828/2032/1933/4
39/2041/646/16
**depart** [1] 20/4
**department** [5] 12/212/712/11
12/1935/25
**depending** [1] 17/11
**depicts** [1] 51/22
**deploying** [1] 17/24
**depose** [2] 31/1831/19
**deposition** [14] 7/228/88/1111/8
11/1911/2112/721/721/1321/1722/1
30/2131/532/5
**depositions** [6] 4/186/166/22
29/1929/2530/17
**depth** [1] 54/1
**Derivative** [1] 18/7
**described** [2] 15/5
**describing** [1] 23/22
**desire** [1] 56/20
**determine** [2] 12/813/11
**dialogue** [2] 56/1556/20
**Dick's** [1] 45/3
**did** [28] 4/64/105/185/208/78/23
9/2310/110/210/410/710/810/21
11/511/612/1813/313/1318/1619/6
41/446/1046/1147/2050/2551/251/3
52/23
**didn't** [18] 7/1511/312/1412/15
13/1015/1822/1330/1437/1346/13
47/847/847/1248/1448/2449/149/19
53/18
**difference** [1] 49/3
**different** [10] 18/1118/1528/5
31/2431/2532/132/133/241/2342/9
**differently** [1] 17/10
**DiFiore** [1] 53/3
**digital** [1] 58/6
**Director** [2] 1/111/13
**disclaimers** [1] 17/24
**disclosed** [3] 10/1912/1915/4
**disclosure** [4] 4/227/1125/1545/2
**disclosures** [4] 7/815/415/19
25/23

**D**

discover [1] 50/13
discoverability [3] 40/1052/24 53/6
discoverable [10] 9/69/1936/1 44/2050/450/1752/452/1052/13 54/25
discovery [18] 3/173/254/47/12 7/217/2311/414/2517/1822/729/22 32/1933/433/434/1543/1044/18 45/18
discuss [2] 52/2353/10
discussed [2] 29/554/18
discusses [1] 53/3
discussion [3] 27/1656/957/6
discussions [3] 55/1255/1956/24 59/14
dispute [1] 39/14
distinct [3] 44/647/2254/5
distinction [4] 27/335/249/10 54/3
distinctions [1] 47/3
distinguished [1] 27/4
distress [2] 44/2545/2
DISTRICT [12] 1/11/118/531/131/7 31/831/1045/145/152/952/958/9
divulged [1] 53/19
do [28] 4/135/1810/2312/216/9 17/920/1920/2320/2325/428/15 28/2429/1432/1435/1636/538/7 38/1639/1040/1840/2049/1050/22 54/857/257/357/1357/20
docket [4] 36/436/936/1537/5
doctors [1] 38/22
doctrine [3] 21/1624/726/11
document [1] 35/12
documents [12] 7/248/117/1121/5 21/921/1221/1822/2223/326/1533/5 38/10
DOE [14] 1/31/31/31/31/31/33/1 8/88/118/1311/1726/2426/2526/25
Doe's [2] 8/1238/14
does [6] 1/149/1814/2023/845/2 52/14
doesn't [5] 7/222/2349/851/21 54/4
dog [1] 31/16
doing [2] 11/2129/20
don't [32] 5/147/69/2510/912/24 13/2515/1515/1515/1516/1117/11 19/619/1820/922/1323/1328/1129/5 29/1331/1531/1736/1738/246/15 47/2048/148/448/548/1951/153/22 54/17
done [4] 19/2130/1337/1441/3
doorstep [1] 11/1
dot [1] 13/18
Doug [1] 26/25
Douglas [1] 3/14
down [7] 24/1734/438/2240/942/15 48/352/21
drabs [1] 48/10
draw [1] 49/11
drawing [1] 47/3
drawn [1] 47/4
dribs [1] 48/10
drop [2] 10/2330/10
during [6] 22/133/2439/2143/10 46/746/14

**E**

each [1] 4/19
earlier [2] 3/2556/22
easily [2] 22/1127/2
Eastern [1] 45/1

easy [1] 28/3
effort [1] 57/8
either [3] 14/1126/1937/14
electronic [2] 36/858/6
element [1] 19/16
eleventh [5] 7/107/2010/2317/16 34/7
eleventh-hour [1] 10/23
else [12] 14/2316/2428/1629/15 33/1333/2534/334/2036/249/1054/8 57/17
elsewhere [1] 17/19
email [21] 4/15/155/216/218/12 8/2110/2313/1713/1814/514/1317/1 17/2418/1018/2519/1021/823/21 24/2445/1849/9
emailing [1] 45/13
emails [103]
emotional [6] 9/544/2545/151/7 51/1752/25
employees [1] 19/9
employment [1] 51/9
enclosing [1] 34/23
encourage [1] 56/24
end [3] 11/437/853/20
endeavor [1] 37/21
engage [1] 56/20
enough [5] 19/2428/2129/1432/8 53/25
enter [1] 32/14
entering [1] 18/13
entire [2] 44/2454/24
entirety [3] 33/434/2441/14
entitled [10] 6/314/1222/626/7 33/1434/841/1041/1448/1455/21
equipment [2] 18/2218/23
et [3] 3/13/219/2
evaluation [1] 33/8
even [2] 13/417/15
event [7] 5/1719/1424/728/655/9 55/1956/23
events [1] 57/23
ever [2] 7/57/7
every [3] 9/209/2019/22
everybody [2] 9/2157/25
everyday [1] 50/1
everyone [1] 45/5
everything [10] 19/1823/1133/24 34/334/1037/2240/240/646/2352/14
exact [1] 54/1756/12
exactly [1] 23/17
except [2] 13/314/4
exchange [1] 29/20
Executive [1] 1/9
executives [1] 18/10
expectation [5] 18/918/1118/16 18/2119/3
expected [1] 13/2
expecting [1] 19/15
expedition [1] 52/6
expended [1] 57/9
expert [1] 29/20
explained [1] 27/13
extend [1] 28/21
extra [1] 14/18

**F**

face [1] 8/24
Facebook [43] 41/641/741/741/8 41/941/1041/1441/1942/642/16 42/1942/2543/643/1644/144/444/5 44/744/1444/1545/245/545/745/12 45/2147/647/847/1048/148/12 48/1248/1349/549/950/1651/20

51/2252/1452/2352/2453/453/753/8
facing [2] 54/354/4
fact [7] 4/259/1612/818/1528/7 41/1846/8
fair [2] 19/2432/6
fairness [1] 47/5
faith [1] 56/17
falls [1] 34/20
familiar [1] 29/2
family [5] 9/939/2446/350/1052/2
far [18] 3/254/139/610/1810/19 10/2216/2521/2525/2327/2134/1 36/1939/2040/1041/746/346/16 47/24
fast [1] 8/9
father [1] 26/25
favorable [1] 55/10
February [6] 1/183/2031/1342/11 42/2350/25
February 16th [1] 50/25
February 17 [1] 42/11
February 5th [1] 3/20
February 8th [1] 31/13
federal [2] 31/552/21
fee [4] 55/557/257/757/9
feeds [1] 52/14
fees [6] 55/155/455/1455/1655/22 56/14
feet [1] 30/12
few [1] 32/19
field [1] 22/9
fifth [1] 3/18
figure [2] 7/925/12
figures [1] 55/14
file [5] 23/2332/2333/334/24 36/21
filed [1] 37/20
files [2] 14/2036/20
filling [3] 6/87/1429/10
find [6] 25/1637/637/2147/18 49/1151/19
fine [1] 21/1
fineness [1] 24/3
first [15] 3/213/227/2316/13 16/1518/1530/1931/1442/342/14 43/1443/2144/648/155/25
fishing [2] 49/1552/6
five [2] 42/443/4
Flinton [1] 33/8
Floor [1] 2/7
focus [1] 16/1
follow [2] 36/2443/9
follow-up [1] 36/24
followed [1] 33/23
following [3] 21/721/1753/17
follows [1] 34/15
forensic [9] 33/933/1233/2134/3 34/534/1135/135/535/8
form [2] 24/1834/23
formal [3] 9/2528/2028/22
Forman [2] 52/2253/25
former [1] 7/20
forth [3] 3/2110/1710/1916/22 17/620/1520/1725/1826/229/24 48/18
forward [2] 29/2058/1
found [2] 14/2351/6
four [1] 42/24
frame [1] 40/14
Francisco [1] 33/9
frankly [3] 27/249/1157/5
free [1] 57/2
friend [1] 9/9
friends [5] 39/2346/349/652/3

**F**

friends... [1] 53/16
front [3] 10/140/648/5
full [2] 24/625/3
fully [1] 19/14
Fund [1] 18/7
further [7] 7/2210/2010/2117/20
29/947/1557/11

**G**

gathered [1] 3/16
gathering [1] 3/18
gave [1] 10/5
generated [1] 16/2
George [1] 26/23
get [20] 6/57/911/2512/812/18
16/720/1224/1130/630/731/2437/1
40/1543/846/1747/947/947/1248/21
50/7
getting [4] 10/2047/1651/1456/9
girls [1] 50/15
give [14] 9/2113/1016/925/19
32/1340/1546/2447/1247/1348/9
48/1549/1253/154/6
given [5] 21/1523/223/823/15
34/20
giving [5] 10/335/1140/247/13
48/13
Glenn [1] 26/24
Global [1] 18/6
Gmail [1] 14/8
go [14] 3/224/174/204/2413/16
17/1925/1230/2036/437/737/2348/5
48/749/6
goes [3] 13/2035/1957/7
going [22] 17/1018/1120/2026/8
28/828/1128/1429/1429/1831/19
31/2332/544/1045/2446/1746/23
47/947/947/1348/1550/457/7
GOLDEN [2] 2/93/14
gone [3] 31/1139/2440/5
good [6] 3/93/123/133/1556/16
57/25
Goods [1] 45/3
Goshn [1] 2/11
got [12] 21/1335/936/437/1239/16
39/1646/2148/750/1951/152/14
52/15
gotten [4] 28/1039/746/1846/19
gracious [2] 28/2132/8
granted [1] 29/23
great [1] 31/19
Greeley [1] 2/3
grounds [5] 15/2016/2117/1419/11
47/21
guess [3] 3/2211/1017/20
guidance [1] 32/13
Gupta [1] 29/1

**H**

had [31] 4/166/237/17/38/1511/2
12/1212/1614/615/619/330/2031/1
32/2234/136/136/2037/1838/839/17
39/2440/440/2343/2244/1346/9
46/2254/1956/356/1156/19
hand [5] 3/247/1316/616/2217/17
17/25
handbook [5] 4/86/214/1716/5
17/25
handled [1] 15/13
happen [1] 4/6
happened [1] 16/10
harassment [1] 51/19
hardship [1] 24/10
harmed [1] 9/8

harp [1] 24/2
has [21] 14/2119/1519/2121/22
21/2522/2123/1223/1623/1824/13
25/227/1029/2131/1131/1231/22
33/1134/1738/1441/2243/3
hasn't [3] 34/2234/2235/13
hat [1] 17/16
have [93]
haven't [8] 28/1028/1030/1834/20
38/1546/1846/1955/15
having [3] 14/953/1653/25
HAVKINS [2] 2/63/10
Haze [1] 30/22
he [16] 32/2434/2235/1341/25
43/1843/2143/2343/2344/1344/13
44/1544/2547/1147/1147/12
he'd [1] 47/12
he's [9] 33/1334/2535/1135/13
43/1644/744/1644/1755/13
headline [1] 24/16
hear [5] 6/68/415/1117/2129/9
heard [1] 30/22
hearing [1] 16/13
held [2] 25/325/4
helpful [1] 28/6
Henkin [1] 52/23
her [15] 1/76/1411/1911/2011/21
11/2221/1322/122/1225/727/17
27/2329/550/1051/17
here [18] 19/1624/1327/1428/7
31/632/1540/640/2245/745/846/4
46/2246/2548/348/1751/1651/18
51/19
here's [3] 10/2010/2136/5
herself [1] 21/9
hey [3] 46/2348/850/8
high [1] 55/21
higher [1] 55/15
his [12] 1/621/1033/633/1833/20
34/2235/2138/141/2542/443/23
43/24
history [1] 44/10
Hold [1] 50/22
honest [1] 35/20
Honor [56] 3/133/236/107/198/7
14/2416/2117/819/519/619/2520/3
20/2022/1122/1523/2024/1625/21
25/2227/727/2029/1630/1331/9
31/1832/1633/2335/337/937/17
37/2538/839/1140/1941/441/1643/3
44/945/2547/549/1650/450/2251/4
52/1953/2153/2454/254/954/16
54/2355/2355/2456/1257/1458/2
Honor's [4] 24/2327/1943/10
HONORABLE [1] 1/20
hope [1] 32/24
hour [6] 7/107/107/2010/2317/16
34/7
hourly [1] 57/9
hours [2] 57/857/9
house [2] 19/1019/10
how [9] 4/69/715/1220/1920/23
28/330/131/1741/17
however [7] 6/121/1939/1749/24
54/2355/755/11
Human [1] 1/13
hunt [1] 31/16

**I**

I'd [3] 6/650/1150/12
I'll [10] 24/2330/637/137/19
37/2037/2253/2354/654/657/25
I'm [30] 7/914/714/1414/1716/13
17/2119/320/420/1020/1723/20

23/2024/2425/527/1528/829/229/7
29/1430/1635/1037/1545/547/13
47/1352/152/257/357/557/11
I've [6] 34/634/1036/445/548/2
52/14
i.e [1] 19/1
idea [1] 13/23
identified [1] 12/22
if [68]
IMEs [1] 29/20
imminently [1] 32/24
important [2] 35/237/5
improper [1] 10/12
improperly [1] 10/13
in [180]
in-house [1] 19/10
inaudible [1] 11/9
inclined [1] 57/3
include [3] 32/1250/2152/16
included [1] 22/3
including [8] 17/1333/741/1542/5
42/1642/1942/2543/6
incognita [1] 32/15
incomplete [1] 38/23
incorporated [1] 47/7
independent [1] 56/13
indication [2] 24/2426/12
individual [4] 1/61/75/17/24
individually [5] 1/81/91/101/11
1/13
individuals [5] 9/221/1026/4
26/1527/8
informality [1] 38/7
informally [1] 56/25
information [19] 18/1918/2219/2
21/2423/223/1523/1623/1726/1
26/1328/1929/929/1446/651/751/11
51/1552/1357/1
initial [3] 15/415/1948/21
initials [1] 11/17
inject [1] 57/11
injuries [1] 51/9
injury [2] 51/652/7
insisting [1] 51/15
instance [2] 24/1138/14
Institute [1] 33/9
institution [3] 18/2218/2218/23
institution-laced [1] 18/22
institution-owned [2] 18/2218/23
intended [1] 7/7
intention [1] 10/23
intentioned [1] 28/25
interest [4] 21/2527/427/928/4
interested [2] 56/1456/15
interface [1] 33/9
internal [1] 18/19
internal [1] 18/25
interpose [3] 10/210/710/8
interposed [1] 19/19
into [8] 4/510/2410/2519/1630/3
32/1556/957/11
introduced [1] 19/16
investigations [1] 18/20
involve [2] 10/312/24
involvement [1] 55/1
involving [1] 51/6
irrespective [2] 47/1047/10
is [141]
isn't [6] 5/1310/1519/1245/20
51/1256/3
issue [47] 3/236/78/39/1210/18
15/1216/1417/517/817/2120/120/5
21/422/1422/1622/2323/1824/426/6
30/131/2532/133/133/2534/235/5

**I**

issue... [21] 35/535/2536/136/18
37/2238/840/540/1141/551/1753/1
54/554/1855/1855/2055/2456/256/5
56/556/1956/20

issued [1] 45/5

issues [5] 6/528/632/2047/15
47/15

it [100]

it's [46] 6/259/179/1910/2313/9
14/1014/2114/2415/315/415/18
16/1716/1817/1017/1118/319/12
21/1922/1123/1028/629/1833/20
35/836/836/1137/538/1239/1840/4
42/2343/2144/2147/647/649/949/12
49/1650/450/2451/352/352/1152/13
52/1757/7

item [1] 9/19

items [2] 21/1643/10

its [1] 8/24

IX [1] 1/13

**J**

January [8] 40/2341/441/1342/10
43/444/946/2247/1

January 19th [2] 41/441/13

January 1st [1] 42/10

January 2014 [1] 43/4

JENNINGS [1] 1/9

JESSICA [2] 2/43/5

joined [1] 6/24

judge [9] 1/2128/2529/335/17
35/1735/1948/652/656/10

Julien [1] 30/19

July [4] 3/248/88/1043/2

July 12th [1] 43/2

July 17 [1] 8/88/10

July 2017 [1] 3/24

June [4] 42/1742/2243/1243/19

June 2014 [1] 43/1243/19

June 2017 [1] 42/17

June 28 [1] 42/22

jurisdiction [1] 31/2

jury [1] 55/4

just [45] 8/1313/413/1313/15
14/1016/2318/1320/520/1220/14
20/1825/2228/1829/1630/1430/25
32/1932/2133/2334/2535/437/11
37/1739/1439/1840/941/2445/445/8
47/847/1247/1348/2149/1250/20
50/2351/1552/1954/154/954/16
54/2255/1356/2257/17

Justice [1] 53/2

justifiable [1] 17/19

justify [1] 57/8

**K**

K.L [5] 11/1011/1111/2326/2327/9

KAREN [1] 1/12

keep [1] 10/25

KEITH [1] 1/10

kept [2] 10/2014/18

kind [15] 19/2023/1527/2428/1
28/435/735/1845/2346/949/1151/12
51/1552/1252/1557/1

kinds [1] 39/8

Kirk [1] 3/14

KIRSTEN [4] 1/711/1211/1330/2

knew [1] 51/6

know [43] 4/145/1110/913/2113/22
15/519/619/2120/1020/1420/18
22/1322/2223/1123/1524/1225/4
27/128/1128/2329/530/631/1731/22
35/1535/2036/1738/138/238/238/13

30/2343/1844/1944/2247/547/25
48/453/2254/1754/1856/2357/10

knowable [1] 8/5

KROUNER [19] 2/22/43/53/611/24
15/821/821/2021/2322/423/1826/16
27/1327/1628/1628/2432/2141/25
44/8

Krouner's [1] 13/2026/926/19
29/1739/16

KURT [1] 62/103/211/1511/16
30/443/643/20

**L**

laced [1] 18/22

LAMBERTSON [4] 1/711/1211/1330/3

Lambertson's [1] 30/5

language [2] 6/133/5

large [1] 45/10

last [5] 16/1627/1440/943/252/22

late [1] 19/12

latest [1] 31/13

law [10] 2/23/66/221/2130/24
33/1044/1944/2145/1852/8

lawsuit [9] 13/1414/322/124/9
26/1627/1027/1227/2327/24

lawsuits [1] 22/2

least [5] 15/527/1628/2241/19
45/9

leave [1] 15/2329/17

left [5] 10/1011/125/1325/19
54/23

legal [1] 19/2

length [1] 29/5

let [2] 4/2428/23

let's [2] 15/2316/1

letter [22] 3/203/2110/1216/15
16/1621/2134/2337/2438/138/1
40/1941/2442/1242/1742/2342/24
43/343/843/1543/2450/2451/4

letters [8] 3/2010/1829/541/12
45/2348/548/2252/16

level [1] 51/8

life [3] 9/746/350/15

light [8] 4/2110/1417/2425/15
28/729/1854/2557/6

like [18] 6/68/2415/1717/2120/24
27/529/1333/1735/635/845/1246/7
46/846/1549/1552/1554/154/2

likely [5] 13/1414/2223/1854/25
57/2

limit [1] 51/21

limitation [3] 33/741/149/24

limited [5] 33/2149/1749/1849/21
50/13

limiting [2] 39/1849/23

listening [1] 30/16

lists [1] 42/12

litigation [3] 18/718/2051/9

live [1] 46/10

lives [1] 46/10

living [1] 35/16

LLP [1] 2/9

lodestars [1] 56/22

log [12] 4/235/215/2313/1214/10
21/1522/423/523/626/826/1028/10

logical [1] 49/10

logs [1] 4/3

long [4] 32/734/148/953/16

longer [1] 24/15

look [12] 17/1926/928/236/2539/1
46/2348/850/850/2050/2057/258/1

looking [8] 14/1720/1723/2148/8
50/2351/453/2455/14

lower [2] 53/1253/13

lucky [1] 53/25

LUDWIGSEN [19] 1/62/103/211/15
11/1632/2033/633/733/1233/1534/6
41/1941/2142/2043/143/743/13
43/2144/3

Ludwigsen's [8] 30/432/2333/3
33/533/1534/2537/342/3

**M**

made [10] 13/1122/135/2141/25
43/2243/2347/1647/1747/2549/22

Magistrate [2] 1/2156/10

maintained [1] 36/21

maintains [1] 18/24

make [7] 31/632/432/1240/1445/8
47/2057/3

makes [1] 9/6

making [5] 9/520/631/1052/556/8

Manger [1] 26/24

many [5] 5/1110/1812/2313/945/6

March [3] 33/1033/1057/20

March 1 [1] 33/10

March 13 [1] 33/10

material [2] 6/824/11

materials [13] 17/1317/1424/5
24/1424/1924/2124/2425/225/7
38/1639/2552/1657/1

matter [7] 3/122/224/926/1149/9
49/1353/9

matters [1] 18/19

Matthews [1] 2/10

may [14] 13/1817/1517/2217/23
20/526/1529/2531/2136/1341/6
41/1644/2351/753/24

maybe [2] 22/1028/8

McCarthy [5] 24/1826/2227/11
27/1427/17

McCarthy's [2] 27/2127/22

MD [1] 33/8

me [30] 4/2410/110/1214/2115/6
17/419/1720/1424/1224/2025/2
27/1528/328/728/928/1528/2329/10
29/1329/2129/2330/632/1335/8
40/2348/548/1149/1256/1756/22

mean [13] 5/78/239/1814/2018/18
22/2035/1738/2046/148/2551/11
51/1455/3

means [2] 30/944/11

media [39] 10/1810/2139/1539/18
39/2140/640/1040/2541/2141/22
42/142/1042/1342/2443/443/12
43/1743/1944/544/644/744/14
44/1144/2046/646/1547/147/747/10
51/2052/1252/15

medical [1] 39/4

meet [1] 19/20

mental [1] 51/8

mentioned [1] 16/15

menus [1] 52/17

merely [1] 31/4

message [2] 53/1453/15

messages [28] 41/641/841/1041/15
41/1941/2042/642/642/1642/20
42/2543/643/1643/1944/644/744/14
44/1547/1347/2348/1249/152/4
52/2452/2553/453/753/8

messaging [9] 44/144/445/1245/21
47/648/1851/2151/2554/5

messenger [1] 46/19

met [1] 28/21

MICHAEL [3] 1/72/113/13

MICHELLE [2] 2/83/9

midnight [1] 11/2

## M

MIELE [2] 2/93/14
might [6] 10/1427/328/337/24
50/2152/16
military [1] 32/23
mind [1] 51/23
miss [1] 30/14
modern [1] 18/12
moment [2] 24/5
monetary [1] 55/13
monitor [1] 18/25
monitored [1] 18/24
month [1] 44/10
months [2] 42/244/17
moot [3] 22/1424/1355/24
more [8] 14/2116/1117/1827/138/6
38/845/1251/16
mother [4] 26/2327/2338/150/11
motion [8] 20/829/1731/631/8
31/1132/332/1233/19
Mr. [54] 3/156/2311/2413/2015/8
21/821/2021/2322/423/1825/1026/9
26/1626/1927/1327/1628/1628/24
29/1732/2132/2132/2332/2333/3
33/533/1133/1233/1533/1533/15
33/2134/634/2134/2536/2537/3
39/339/1641/1241/2441/2542/11
43/243/943/1343/1544/344/844/12
44/1945/2046/2552/2054/19
Mr. Burke [21] 3/156/2332/21
32/2333/1133/1533/2134/2136/25
39/1341/1241/2442/1143/243/9
43/1544/1244/1945/2046/2552/20
Mr. Burke's [1] 54/19
Mr. Krouner [15] 11/2415/821/8
21/2021/2322/423/1826/1627/13
27/1628/1628/2432/2141/2544/8
Mr. Krouner's [5] 13/2026/926/19
29/1739/16
Mr. Ludwigsen [5] 33/1233/1534/6
43/1344/3
Mr. Ludwigsen's [6] 32/2333/3
33/533/1534/2537/3
Mr. Smith [1] 25/10
Ms [1] 21/18
Ms. [47] 3/193/226/106/147/18/5
11/2011/2316/2219/1520/120/520/7
21/321/321/621/821/1221/2221/24
22/1122/1723/1223/1623/2224/6
24/1325/225/625/1927/527/1427/17
27/2127/2228/1628/2030/530/12
30/1431/1232/438/1151/456/856/11
56/16
Ms. Allyssa [1] 21/6
Ms. Bochner [14] 3/226/147/18/5
16/2219/1520/121/325/1928/20
30/1456/856/1156/16
Ms. Bochner's [5] 3/1920/520/7
23/2251/4
Ms. K.L [1] 11/23
Ms. Lambertson's [1] 30/5
Ms. McCarthy [2] 27/1427/17
Ms. McCarthy's [2] 27/2127/22
Ms. Perez [15] 21/321/821/12
21/2221/2422/1122/1723/1223/16
24/624/1325/225/627/538/11
Ms. Sturtevant [2] 31/1232/4
Ms. Varriale [1] 11/20
Ms. Yanefski [3] 6/1028/1630/12
much [3] 20/2330/2332/13
must [4] 29/234/434/1748/4
my [22] 3/166/166/1711/2121/21
24/324/824/2334/1034/1334/13
34/1435/446/1650/950/2552/252/2

## N

narrow [1] 40/16
narrowed [3] 34/440/146/12
nature [3] 13/2436/1436/22
necessarily [1] 44/24
necessary [2] 19/129/19
need [10] 17/517/2019/1419/17
19/1819/2020/2328/1529/2554/8
negotiation [1] 56/21
nestled [1] 12/21
networking [1] 44/24
Nevada [4] 30/2431/331/631/8
never [10] 4/98/28/1412/1012/14
15/616/2336/136/2441/19
new [12] 1/11/182/32/72/72/11
30/239/440/1043/2543/2553/2
New York [1] 53/2
news [1] 52/14
newspapers [1] 52/17
next [1] 25/25
no [31] 6/138/110/610/2113/23
14/314/314/1014/2018/318/2121/19
21/2221/2522/1222/2323/1124/15
26/1427/1027/2231/1431/1536/12
38/1946/2248/550/654/1154/12
56/19
non [19] 5/2211/811/1421/621/20
22/1722/1922/2024/1724/2025/23
26/326/1626/2226/2327/931/24
38/1038/11
non-parties [4] 24/2026/326/16
38/10
non-party [13] 11/821/621/20
22/1722/1922/2024/1725/2326/22
26/2327/931/2438/11
non-privileged [1] 5/22
none [1] 30/4
nonetheless [1] 40/5
nor [1] 26/12
North [1] 2/3
Northern [1] 52/9
not [116]
note [1] 3/3
notes [3] 34/1334/1335/4
nothing [1] 37/1057/17
notwithstanding [2] 4/2541/1
November [2] 12/643/8
November 16 [1] 43/8
now [20] 7/313/913/1618/219/23
34/737/1837/2240/744/1645/20
47/447/648/148/948/2351/1552/14
55/18
number [7] 23/1323/1434/1542/4
55/2257/957/19
Nyack [28] 1/81/91/111/121/14
1/142/63/106/16/227/17/117/24
8/128/2112/2113/1814/1514/1515/6
18/2419/819/924/1025/827/927/11
27/17
Nyack.edu [14] 4/54/84/174/19
4/235/156/156/2111/2011/2212/8
14/1115/1215/22

## O

o'clock [1] 57/20
objected [1] 16/8
objection [1] 48/15
objections [6] 10/310/710/819/19
41/147/21
obligated [1] 34/10

obligations [1] 17/18
observation [1] 24/23
obtained [2] 39/855/9
obtaining [1] 24/21
obviously [3] 29/1948/1756/24
occurred [2] 30/1830/18
office [18] 2/23/64/46/1411/21
13/2020/521/1022/726/926/1928/21
41/1242/1143/1550/2554/1954/19
Official [1] 58/10
Often [1] 37/24
oh [4] 14/318/337/1548/24
okay [13] 8/311/1814/1417/1229/4
29/832/1232/1738/339/1242/21
49/1251/1
on [109]
once [2] 32/1453/20
one [24] 2/716/1416/2218/822/9
24/526/2426/2428/1832/2037/11
38/840/1841/2343/1848/149/849/8
50/2251/1521/1552/852/953/13
one-to-one [1] 49/8
ones [5] 6/2110/316/147/1748/23
ongoing [1] 39/14
online [1] 14/19
only [14] 10/410/613/713/822/16
31/134/1536/1837/2240/246/2347/9
48/1552/22
Op [1] 53/2
open [2] 54/2356/10
opening [1] 20/6
operates [1] 18/1
opinion [4] 13/919/629/153/1
opportunity [5] 13/1017/820/7
30/1537/13
opposite [2] 56/1256/22
opposition [1] 29/25
opted [1] 13/15
or [63]
order [4] 17/532/1343/1053/18
ordered [1] 41/5
other [20] 7/139/2110/210/1314/1
14/614/2016/2217/1720/121/426/3
30/934/2335/1237/738/243/2547/24
55/3
others [4] 9/1216/2030/1848/16
otherwise [3] 24/1136/247/11
ought [1] 32/14
our [31] 4/44/75/207/2310/2313/8
13/913/1714/414/2418/1621/1922/7
22/1128/2128/2229/2430/2431/13
32/1832/2433/433/1634/1338/12
41/1242/1143/1544/1355/1756/21
out [23] 4/47/1010/1011/612/1
12/712/1512/1915/2317/1017/16
19/1020/1925/425/425/1225/13
25/1932/332/1137/2147/1854/1
out-of-house [1] 19/10
outrageous [2] 7/1215/18
outrageously [1] 8/24
outset [1] 15/14
outstanding [3] 7/2032/1843/9
over [19] 6/2315/818/1719/821/15
21/2322/724/1426/634/134/1134/18
39/1343/2143/2345/2253/1253/26
55/19
overbroad [1] 45/24
overdue [1] 26/20
overly [1] 46/12
overtaken [1] 57/22
own [10] 4/104/168/149/159/17
11/2512/1612/1713/1113/12
owned [2] 18/2218/23

**P**

page [1] 39/1
pages [2] 23/1323/14
pains [1] 31/19
panoply [1] 25/3
papers [2] 20/628/829/2533/19
paralegal [1] 23/22
parent [2] 27/328/3
parent/daughter [1] 28/3
parents [2] 26/2326/24
Park [1] 2/7
parsing [1] 48/24
part [5] 25/650/1652/1355/155/12
Particularly [1] 51/5
particular [2] 31/1545/15
parties [8] 21/2524/2026/326/16
38/1051/354/1056/14
parties' [1] 18/8
party [16] 11/821/621/2021/22
22/1722/1922/2024/1724/2225/23
26/2226/2327/927/1231/2438/11
pass [1] 37/13
passing [1] 18/23
path [1] 24/17
PAUL [1] 1/20
PC [1] 3/6
PED [1] 1/5
people [4] 5/1126/2133/738/7
Perez [24] 20/220/321/321/621/8
21/1221/1721/1821/2121/2221/24
22/522/1122/1723/1223/1623/21
24/624/1325/225/626/1027/538/11
period [4] 24/645/2429/2153/10
periodically [1] 5/13
person [4] 3/1834/1438/250/11
personal [2] 18/1951/6
phone [4] 31/1350/750/1057/15
phones [2] 50/550/6
phrase [1] 41/24
physical [1] 51/8
physicians [1] 38/12
picked [2] 8/179/16
place [2] 12/2555/12
Plains [1] 1/18
plaintiff [16] 4/195/175/1813/10
13/1114/2515/227/327/427/1827/21
29/2244/2046/151/1756/25
plaintiff's [4] 4/54/114/2252/25
plaintiffs [68]
plaintiffs' [41] 5/256/78/148/17
9/139/159/2315/1015/1115/1216/14
17/2221/521/1021/1121/1221/15
22/522/1822/2123/125/2426/228/19
29/2133/137/738/1240/1141/141/14
42/943/1243/1944/2350/2551/7
54/1854/2055/1256/3
planned [1] 30/20
players [1] 39/19
Plaza [1] 2/7
please [1] 3/3
Plus [1] 36/16
point [8] 24/424/1325/1725/22
28/1848/348/354/1
pointedly [1] 51/16
points [2] 32/1948/2
portion [1] 51/5
portions [1] 48/15
position [9] 14/416/421/1931/15
39/1640/140/846/552/10
possession [10] 4/54/710/2410/25
12/1832/2433/1535/2437/639/6
possibly [3] 17/1437/2155/15
post [2] 8/88/11
post-deposition [2] 8/88/11

posted [2] 45/949/7
posting [1] 54/5
postings [3] 48/1251/2351/24
posts [26] 41/841/2242/1042/24
43/443/1243/1944/744/1145/347/7
46/1546/1746/2147/747/1447/16
47/2047/2248/2448/2549/449/5
51/2154/354/4
potential [1] 27/23
potentially [1] 12/22
precluded [1] 15/17
preliminary [1] 27/16
premature [1] 26/18
premise [1] 56/7
preparation [1] 26/17
prepared [1] 29/7
preposterous [1] 6/25
present [8] 28/440/2541/1142/10
42/1443/543/1243/20
preservation [1] 48/21
President [2] 1/81/9
presumably [4] 5/2112/1615/726/7
presumption [1] 13/17
pretty [1] 27/2
preview [1] 28/6
previously [2] 34/955/24
primitive [1] 45/6
prior [6] 5/25/532/2134/946/13
49/20
privacy [1] 18/918/1218/1718/21
19/447/22
private [7] 14/841/847/2049/5
49/853/1554/4
privately [1] 47/17
privilege [31] 4/34/235/215/23
6/36/36/613/1213/1614/514/714/10
14/1214/1318/118/419/721/1521/20
22/422/622/1423/523/624/825/6
25/1626/826/1028/1028/24
privileged [3] 5/2212/2222/5
privity [1] 21/22
probation [6] 34/234/534/1235/25
36/2036/20
problem [4] 25/1838/1946/2552/13
procedures [1] 31/10
proceed [1] 55/20
Proceedings [2] 58/4
process [2] 14/1957/10
produce [16] 7/57/169/139/159/17
12/1513/2213/1216/516/817/1429/18
34/442/342/854/21
produced [16] 4/225/145/155/22
6/97/1510/615/1616/1916/2317/1
19/1921/722/1238/1539/25
product [9] 21/1421/1621/2322/6
22/2424/726/1126/1528/24
production [3] 7/2142/1345/18
productively [1] 29/15
proffer [1] 32/13
proposed [1] 32/13
proposition [1] 50/20
provide [8] 5/205/2012/1613/15
14/2529/1840/2544/9
provided [28] 4/24/34/128/169/1
10/912/1014/1020/621/1221/24
22/422/2223/1223/1624/625/326/8
26/1226/1333/1133/1336/544/11
44/1447/1955/15
providing [2] 38/1938/23
psychiatric [8] 33/1233/2134/23
35/135/736/1636/2237/7
psychiatrist [1] 38/14
psychological [1] 35/7
psychology [1] 33/9

public [4] 36/947/1949/454/3
public's [1] 36/21
publicly [10] 33/2534/335/22
35/2436/336/536/1937/1937/20
47/16
pulled [1] 17/15
purpose [1] 45/22
pursuant [1] 25/8
put [8] 7/822/1023/823/1846/16
53/155/2557/15
puts [1] 51/17

**Q**

question [4] 17/2217/2319/15
27/24
quickly [1] 54/16
quite [1] 17/14
quote [1] 14/17
quoting [1] 51/5

**R**

raise [2] 47/1148/14
Rakoff's [2] 29/129/3
re [3] 18/618/638/24
re-served [1] 38/24
reach [1] 17/23
reached [2] 12/112/7
reaching [1] 12/19
read [11] 5/1218/1819/319/524/3
33/534/1553/2253/2354/154/6
reading [2] 24/2454/2
reaffirmation [1] 40/8
really [8] 13/119/1620/923/11
32/348/2449/849/14
reason [2] 11/313/25
reasonable [1] 18/8
recall [3] 27/1530/2047/20
receive [4] 22/1626/526/1841/5
received [6] 16/1919/121/1826/12
38/2142/5
recent [1] 12/5
recently [4] 4/438/2138/2452/21
recipient [1] 45/16
recipients [1] 45/10
recollection [6] 6/146/166/17
6/1819/2227/19
recollections [1] 33/2
record [6] 3/46/166/196/2029/10
56/10
recording [1] 58/7
records [9] 10/1823/2333/1435/7
38/1338/1438/2339/450/7
redacted [1] 54/21
refer [1] 52/15
reference [1] 19/21
referenced [1] 21/21
referring [1] 52/16
refers [1] 45/9
reflect [2] 36/1551/7
refused [1] 17/13
regard [4] 16/1829/1029/1232/18
regarding [2] 26/833/3
regardless [1] 7/4
regards [2] 47/2254/10
relate [3] 13/1313/1942/5
related [11] 3/179/19/319/226/16
26/1730/439/1939/2044/348/4
relates [3] 20/121/456/8
relating [4] 41/2142/2042/2543/6
relation [1] 34/15
relationship [6] 9/814/122/21
28/551/2252/3
relationships [2] 9/99/10
relative [1] 18/19

**R**

relevance [4] 16/2117/1441/2
45/18
relevancy [1] 47/11
relevant [14] 9/412/2413/113/5
13/1017/117/331/1734/1737/444/14
44/1844/2451/20
religion [1] 9/10
rely [1] 39/9
remains [1] 14/20
remarkable [1] 49/11
remedy [1] 10/11
removed [1] 39/23
renew [1] 55/17
report [9] 33/1233/2134/334/23
35/135/836/1636/2237/7
Reporter [1] 58/10
reports [3] 33/834/534/11
representation [2] 24/441/25
represented [1] 34/22
represents [2] 17/221
request [16] 6/248/19/2431/7
33/1642/342/442/842/943/2243/23
43/2444/144/145/2449/22
requested [20] 3/256/146/217/14
7/177/217/239/2212/1214/915/1
15/216/725/725/2426/132/2233/3
41/1954/20
requesting [2] 11/2248/11
requests [5] 10/2119/229/1038/9
56/13
required [1] 38/16
requires [1] 9/20
reserve [2] 18/629/14
resolve [1] 17/5
resolving [1] 19/20
Resources [1] 1/13
respect [2] 24/827/14
respectfully [1] 55/23
respectively [1] 33/10
respond [6] 5/189/2320/720/11
25/2528/12
responded [4] 5/1911/2331/12
40/23
response [19] 3/185/208/168/25
9/2517/219/1820/1321/1321/1922/8
23/1726/1326/1926/1928/2040/16
40/1641/13
responses [8] 10/2026/528/10
28/2229/1139/1741/548/7
responsive [2] 8/117/1
rest [4] 13/2422/1023/923/19
restricted [1] 53/9
restriction [1] 49/13
result [4] 18/1539/2440/1250/1
retained [1] 56/3
retainer [9] 54/2054/2254/24
55/1755/2556/656/2157/557/6
retainers [1] 54/18
retrieving [1] 19/1
reveal [1] 17/11
review [3] 13/713/818/25
reviewed [3] 5/256/196/20
reviewing [1] 6/16
revolved [1] 30/4
rhythm [1] 24/18
Richards [1] 26/23
right [33] 3/165/115/136/510/16
13/2213/2516/318/218/1718/2424/1
25/127/1328/2329/830/2432/932/9
36/1337/1037/1639/544/445/17
46/2046/2147/254/655/556/357/12
57/23
ripe [3] 55/1855/2456/19

**S**

rise [1] 58/3
RITZERT [2] 2/63/10
ROSENFELD [2] 2/63/10
rough [1] 3/16
routine [1] 14/18
rule [11] 7/89/169/189/2015/19
17/2519/1528/828/829/1238/24
ruled [1] 55/24
ruling [2] 28/1554/7

**S**

said [12] 11/2413/416/920/18
21/1631/134/2244/844/2347/947/11
53/15
salvo [1] 20/6
same [15] 11/1716/419/919/11
23/1323/1726/638/2239/139/339/24
42/1642/2345/845/17
San [1] 33/8
saw [2] 8/224/3
say [17] 7/1910/310/416/528/17
36/546/1247/647/847/847/1348/8
48/1049/1249/2450/850/13
saying [11] 10/1210/2535/1336/4
37/2439/2248/148/1548/2449/25
50/9
says [10] 26/1043/943/1843/21
44/1348/351/551/551/1651/21
SCALES [1] 1/8
scenario [1] 7/3
schedule [1] 30/19
scheduled [1] 57/13
scheduling [1] 32/8
school [1] 9/8
scope [5] 39/1541/2049/1749/18
49/23
screen [1] 53/23
sealed [4] 36/1136/1336/1636/17
sealing [1] 36/19
season [1] 39/21
second [7] 25/2530/2033/133/4
42/843/1850/22
Securities [1] 18/7
see [7] 9/617/619/1827/228/3
37/1946/14
seek [3] 11/612/1519/9
seeking [3] 29/2244/2555/21
seems [10] 24/1225/227/529/13
31/1933/133/2235/641/954/2
seen [2] 22/1328/10
selection [1] 12/21
selective [1] 25/18
send [2] 4/1720/14
sending [1] 37/25
sense [1] 49/16
sensitive [1] 18/1436/22
sent [13] 4/1913/1814/418/25
21/2425/926/1638/1338/1441/12
42/542/1145/22
sentencing [9] 33/733/2434/12
34/1734/2535/1335/2137/437/25
separate [2] 8/355/5
separately [1] 42/13
September [1] 35/9
series [2] 3/193/20
serve [4] 9/2139/339/742/1
served [11] 8/118/149/1411/7
21/1122/825/2325/2526/426/638/24
server [7] 4/84/135/111/312/13
14/518/10
servers [2] 19/819/11
serving [1] 38/9
set [3] 17/1229/2439/17
settlement [11] 54/1054/1154/12

55/1155/1255/1956/856/956/20
56/2156/24
seven [1] 42/24
several [1] 54/17
sex [1] 36/14
sexual [1] 51/18
share [1] 57/1
shared [1] 55/24
she [21] 7/211/2221/1321/2221/23
21/2522/122/1322/1722/1922/20
22/2022/2225/1327/927/1028/22
44/2548/256/1756/22
she's [6] 23/825/325/425/946/15
50/9
shed [2] 10/1457/6
shoes [1] 30/10
short [2] 6/1324/4
shortly [1] 15/7
should [20] 7/711/2311/2415/19
18/2018/2120/2022/623/125/19
28/2230/1931/637/740/2050/750/12
50/1355/1857/15
show [3] 46/646/850/7
showing [2] 24/1054/22
shows [1] 50/10
side [1] 9/21
sides [1] 20/12
Silva [1] 45/3
similar [4] 26/935/440/445/21
simple [2] 41/1848/11
simply [2] 6/76/25
simultaneous [1] 20/21
simultaneously [1] 24/21
since [5] 3/2112/920/743/2143/23
sit [2] 14/1517/12
six [1] 55/14
Sixth [1] 2/7
slightly [1] 28/19
slip [2] 53/153/2
smaller [1] 51/22
Smith [2] 23/2225/10
snapshot [1] 51/22
snippets [2] 4/25/19
so [71]
social [40] 10/1810/2139/1539/18
39/2140/640/1040/2541/2141/22
42/142/942/1342/2443/443/1243/17
43/1944/544/644/944/1144/1144/20
44/2446/646/1447/147/747/1048/13
49/250/250/1551/751/1151/1451/20
52/1252/15
softball [6] 1/129/210/412/25
16/1039/19
some [18] 15/710/616/1916/21
19/2023/1528/429/534/1935/635/15
35/1837/1838/1346/951/1452/12
57/1
somebody [6] 11/127/531/2031/21
37/453/16
somebody's [1] 50/21
somehow [1] 49/7
someone [1] 48/19
something [26] 4/247/148/511/2
13/1715/115/316/2420/2325/327/18
34/1935/2236/1337/1237/2038/21
45/948/1748/2250/1150/1251/25
54/1555/2056/17
sometime [1] 15/7
Sometimes [1] 38/4
somewhat [3] 17/1828/2545/6
somewhere [1] 16/17
sorry [6] 8/1017/2120/420/10
37/1542/22
sort [6] 7/220/1224/1828/535/15

| S | T | |
|---|---|---|
| sort... [1] 47/21 | tagging [1] 56/21 | 25/14,552/2,239/5387/1339/848/1150/15 |
| sorts [1] 52/17 | take [3] 24/2331/1441/16 | 52/455/2 |
| sounds [3] 8/2435/749/14 | taking [4] 32/1540/141/955/12 | they [90] |
| Sourdiff [1] 51/10 | talk [1] 29/1556/17 | they'd [1] 18/18 |
| SOUTHERN [5] 1/118/531/731/10 | talked [1] 47/1 | they're [27] 7/139/410/1210/13 |
| 52/8 | talking [9] 8/928/732/835/635/8 | 10/1513/113/2313/2324/1531/19 |
| speak [1] 29/7 | 43/1647/750/1851/24 | 31/2334/834/836/438/2339/2240/1 |
| speaking [1] 50/9 | tap [2] 50/550/6 | 40/1544/1846/2348/148/2349/150/2 |
| specific [2] 16/1253/10 | TAYLOR [1] 1/11 | 52/152/557/2 |
| specifically [5] 14/1130/152/23 | team [2] 10/416/10 | they've [5] 14/732/739/2340/1 |
| 53/354/4 | tee [1] 40/18 | 46/2 |
| specified [1] 23/3 | teed [1] 36/23 | thing [8] 16/2220/1836/1842/17 |
| spoke [1] 30/25 | telephone [1] 57/21 | 47/2451/1352/153/13 |
| Sporting [1] 45/3 | tell [3] 13/1345/448/6 | things [9] 29/1338/739/840/18 |
| stance [1] 41/10 | telling [4] 15/517/428/929/23 | 47/1748/1150/1752/1552/17 |
| stand [1] 3/3 | tells [1] 56/17 | think [3] 3/194/246/614/116/17 |
| standard [1] 44/22 | temporal [1] 49/24 | 17/517/917/1017/1119/2120/14 |
| standing [2] 23/20 | term [3] 43/444/551/12 | 20/1922/1425/125/1528/1432/14 |
| start [1] 3/25 | terminology [2] 45/849/7 | 35/235/1137/440/2040/2140/2241/6 |
| state [5] 38/640/951/851/2352/25 | terms [5] 24/1941/1741/2145/18 | 46/547/149/1049/121/151/2555/23 |
| stated [1] 14/16 | 56/7 | thinking [2] 5/234/19 |
| statement [1] 32/6 | terra [1] 32/15 | thinks [1] 35/1 |
| STATES [3] 1/11/171/21 | test [1] 18/7 | third [2] 24/2242/15 |
| status [1] 29/17 | testified [8] 4/165/38/1514/6 | this [122] |
| step [1] 24/3 | 14/921/821/1327/12 | those [22] 6/238/211/2314/917/11 |
| still [7] 14/1433/1438/2239/18 | testifying [1] 9/7 | 18/718/1119/922/1323/1424/21 |
| 40/440/1443/11 | testimony [5] 22/126/1726/17 | 28/2032/1138/1539/1739/2546/7 |
| stop [1] 24/7 | 31/2449/25 | 47/1748/550/1752/452/8 |
| stored [1] 18/23 | text [2] 42/649/9 | though [5] 8/311/113/413/713/21 |
| storming [1] 29/19 | texting [1] 50/3 | thought [2] 37/437/18 |
| stranger [1] 27/5 | than [4] 14/2218/1337/739/20 | thousands [2] 12/2012/24 |
| Street [1] 2/10 | Thank [6] 3/83/2332/1637/957/24 | three [1] 34/15 |
| strong [1] 46/5 | 58/2 | through [8] 14/418/2319/1731/19 |
| stuck [1] 14/14 | that [367] | 41/1742/1448/550/16 |
| student [4] 14/1617/2527/927/11 | that's [41] 8/310/1713/2113/22 | throughout [1] 41/23 |
| students [1] 18/13 | 16/2216/2417/921/2123/2525/19 | time [30] 7/229/2010/1112/115/20 |
| Sturtevant [3] 30/2131/1232/4 | 27/2028/1331/2432/136/2337/8 | 18/1520/2325/2527/1429/1031/25 |
| subheading [6] 42/1542/1542/24 | 37/1637/2038/2039/1139/1940/20 | 32/234/134/1237/543/1444/645/22 |
| 42/2443/343/5 | 40/2142/1443/443/2244/1445/1 | 46/1448/148/949/2151/2353/10 |
| subheadings [1] 42/13 | 45/1145/1445/1549/549/650/11 | 54/1154/1454/2156/256/857/14 |
| subject [10] 11/1913/2416/2122/2 | 51/1051/1151/1351/2452/1055/20 | timeframe [1] 39/21 |
| 24/945/1749/1353/955/555/25 | 57/10 | timeframes [1] 50/17 |
| subjective [1] 18/8 | their [75] | timeline [2] 41/1746/15 |
| subjects [1] 10/14 | theirs [1] 7/4 | times [4] 7/27/410/1845/6 |
| submission [3] 35/1935/2141/13 | them [34] 4/174/185/127/77/89/14 | timing [2] 15/1724/2 |
| submissions [4] 20/2036/1637/6 | 10/410/511/111/111/211/2412/2 | Title [1] 1/13 |
| 58/1 | 12/1812/1913/213/913/913/2313/24 | today [5] 19/1522/1229/1532/22 |
| submitted [15] 16/1633/533/18 | 15/1716/617/1621/628/834/1737/1 | 53/25 |
| 33/2434/234/534/1134/1634/24 | 44/1644/1745/646/946/1846/2457/3 | TODD [4] 2/22/43/53/6 |
| 35/1236/236/2037/337/1937/20 | themselves [1] 39/23 | together [3] 20/1220/1346/16 |
| subpoena [6] 21/723/1726/1330/21 | then [25] 4/186/2410/815/415/20 | told [5] 7/2534/2540/1540/23 |
| 38/1039/9 | 15/2117/1519/919/2002/1623/18 | 56/22 |
| subpoenaed [3] 21/1822/1223/23 | 31/731/2334/442/1543/243/543/14 | tomorrow [1] 30/19 |
| subpoenaing [1] 24/21 | 46/446/646/747/1247/1550/157/15 | too [2] 19/1247/24 |
| subpoenas [4] 26/426/526/2028/12 | there [45] 3/208/114/1015/516/17 | took [2] 12/2556/12 |
| substance [3] 42/2356/956/10 | 16/2019/1920/2021/1923/325/12 | topic [3] 28/1730/1430/15 |
| such [2] 3/1819/8 | 26/1427/1627/2228/128/1632/20 | touch [1] 54/4 |
| suddenly [1] 43/16 | 34/2135/1435/1535/2035/2236/1 | trail [1] 31/11 |
| suggesting [1] 16/23 | 36/1336/2337/237/1037/1237/19 | transcript [1] 58/6 |
| suggests [1] 14/21 | 37/2438/240/1141/741/841/844/22 | transferred [1] 31/8 |
| Suite [2] 2/32/10 | 46/846/2248/348/1750/1053/11 | transmission [1] 19/8 |
| summaries [1] 57/1 | 54/1154/1256/2 | transmitted [1] 18/20 |
| supplement [2] 17/840/24 | there's [19] 22/2323/1125/325/18 | transparently [1] 17/4 |
| supplemental [1] 38/24 | 31/1434/1935/1837/1738/639/14 | treating [1] 38/12 |
| supplementation [1] 38/17 | 40/742/946/547/1547/1548/1749/3 | tremendous [1] 49/3 |
| supports [1] 52/10 | 50/1057/17 | trial [2] 31/2254/24 |
| suppose [1] 17/18 | therefore [4] 22/327/2348/455/16 | troubleshooting [1] 19/1 |
| supposed [2] 15/439/9 | these [48] 4/95/15/256/47/27/6 | trove [1] 14/15 |
| supposedly [1] 46/21 | 7/67/119/610/410/2411/712/312/18 | true [6] 14/1614/1814/2143/22 |
| sure [9] 6/1215/2518/319/345/8 | 13/2214/2215/115/915/1515/16 | 44/1458/5 |
| 57/357/557/1157/17 | 15/1816/516/1917/1220/621/14 | try [3] 29/1231/1953/22 |
| suss [1] 32/3 | 24/1425/1726/426/526/726/826/15 | trying [2] 7/932/3 |
| system [1] 17/24 | 26/2026/2128/628/1128/1229/12 | turn [5] 34/1134/2141/2353/12 |
| | | 55/18 |

**T**

turned [5] 15/821/1522/724/13
34/18
turning [1] 54/3
twentieth [1] 3/17
two [13] 18/518/1120/1120/2024/5
24/727/730/1732/2040/1843/2044/8
52/8
type [1] 20/18
typically [2] 35/1851/19

**U**

U.S [1] 58/9
ultimately [1] 32/10
umbrella [2] 48/1348/23
under [6] 38/1643/343/548/12
48/2249/1
understand [5] 30/838/945/445/7
49/4
understandably [1] 52/21
understanding [5] 18/918/1222/11
35/1045/7
understood [5] 25/2025/2127/7
37/2256/18
undocketed [1] 37/6
unilaterally [1] 28/12
unintelligible [1] 9/11
unitary [1] 35/18
UNITED [3] 1/11/171/21
universe [1] 12/20
unless [1] 57/22
unlikely [1] 25/2
unnumbered [2] 42/1442/15
unopposed [1] 32/5
unqualified [2] 44/2144/22
unredacted [1] 55/17
unrelated [1] 42/12
until [3] 11/315/741/23
unwilling [1] 25/16
up [10] 14/1915/1926/730/1531/22
36/2336/2440/1843/948/3
update [1] 54/9
upon [7] 4/226/16/169/1411/24
21/2125/23
upward [1] 55/14
us [27] 4/1013/1013/1313/1515/1
22/2223/223/1223/1627/1432/15
32/2333/1133/1334/2234/2538/16
38/2339/340/1547/1248/948/11
48/1348/1952/555/14
usage [2] 51/2051/22
use [3] 7/715/418/25
used [3] 35/1541/1741/22
user [1] 14/20
user's [1] 51/22
users [1] 18/20
using [7] 6/411/811/914/1318/21
44/545/8
usually [1] 29/12

**V**

vague [1] 41/7
value [1] 55/13
various [4] 4/25/2421/826/3
VARRIALE [3] 2/63/1011/20
Vegas [1] 31/20
verbally [1] 38/7
verdict [1] 55/10
version [1] 15/12
versus [6] 3/145/347/1649/751/21
53/14
very [10] 8/915/715/1416/1818/11
18/1522/1027/350/252/18
via [4] 19/734/2238/1038/11

vice [1] 1/5
view [1] 10/13
violation [2] 7/1317/17
voluntarily [1] 14/12

**W**

waiting [1] 43/11
waived [6] 6/46/614/514/714/12
19/7
waiver [3] 18/118/325/18
waiving [1] 18/16
walk [1] 19/17
walk-me-through [1] 19/17
want [16] 15/315/1115/1515/15
20/920/920/1828/1730/1431/18
37/1343/945/848/1957/1157/17
wanted [2] 47/854/9
wants [3] 22/956/2456/25
warrant [1] 45/2
warrants [1] 45/6
was [110]
wasn't [9] 10/2314/2516/1435/24
36/1737/1437/2347/350/9
way [10] 9/1111/523/1128/934/11
38/2242/549/1749/2356/25
ways [2] 10/1549/2
we [136]
we'll [5] 16/930/1030/1032/11
39/6
we're [25] 10/320/626/827/2128/7
29/1937/2538/2239/1639/1640/240/4
40/1441/1444/1045/846/2347/748/8
48/1448/1550/1850/2355/2157/22
we've [11] 16/2524/1726/1829/24
38/2139/740/648/849/1752/1455/16
Wednesday [1] 16/16
week [7] 20/2420/2521/121/225/25
40/952/22
week's [1] 29/10
weeks [1] 41/25
welcome [2] 3/717/7
well [33] 4/156/213/1215/318/18
19/1222/1923/2524/126/2027/127/3
31/1731/2134/2136/236/636/15
40/1943/1344/1645/2547/647/18
48/1550/653/1351/1651/1752/12
54/755/356/23
well-being [1] 51/17
went [3] 10/1746/453/20
were [47] 4/14/24/125/155/257/4
7/57/67/258/18/168/179/79/1111/2
11/612/1012/1416/2016/2017/17
18/1619/1921/521/921/1522/1226/6
27/1430/231/1234/534/1134/1635/5
35/636/1640/2244/746/746/1546/22
47/1647/1748/750/1656/14
weren't [1] 13/4
Western [1] 45/1
what [72]
what's [4] 5/136/537/1943/25
whatever [2] 11/339/7
whatsoever [1] 45/23
when [20] 4/189/79/2212/412/18
30/730/1032/1140/1040/2244/8
49/1749/2449/2452/2554/254/23
55/2456/356/16
where [16] 6/257/37/2114/1715/20
16/533/340/643/1544/1044/1344/19
44/2046/2248/1751/17
Whereas [1] 45/12
whether [22] 6/66/77/57/107/12
7/1310/1412/817/2323/1125/13
27/2428/1135/2538/1048/1849/9
50/350/452/1153/1656/25

which [46] 4/185/215/235/247/5
8/118/1710/911/2412/1712/2114/7
14/817/2217/2321/1822/323/11
25/2426/126/528/2029/2432/20
32/2233/133/2134/1435/735/937/18
38/938/1641/2245/2447/748/149/4
49/649/850/1550/2151/1851/19
52/1652/2052/2353/25
while [2] 18/2155/11
White [1] 1/18
who [29] 6/2111/1211/1411/21
13/2313/2318/1320/1820/1820/19
21/722/923/2224/326/2127/327/5
27/827/827/1227/1731/131/1231/18
31/2143/949/1449/2550/7
who's [2] 27/946/1
whole [1] 57/10
whom [1] 9/2
whose [2] 27/1131/22
why [3] 12/1714/1445/20
will [13] 12/2318/1318/2420/5
26/1229/829/929/2232/2439/945/4
56/1657/19
withdrawal [1] 52/1
withdrawn [5] 46/246/946/1050/9
53/1
withheld [1] 16/20
withhold [1] 47/21
withholding [2] 10/1325/7
within [5] 5/2112/2034/2036/20
52/9
without [7] 12/312/933/740/25
47/349/1356/9
witness [5] 21/624/1725/1631/4
38/11
witnesses [1] 28/11
wonderful [1] 20/13
words [3] 10/243/2555/4
work [13] 9/820/1320/1921/14
21/1621/2322/622/2324/726/10
26/1428/2432/11
work-product [1] 22/6
working [3] 39/1640/1548/10
works [1] 38/22
world [2] 18/1445/9
would [45] 7/1910/1111/2215/17
17/717/2119/319/920/1321/1422/3
23/1825/1726/626/1427/2428/328/4
31/233/1435/2235/2536/1742/144/9
44/1845/1945/2546/546/1247/11
50/350/550/653/1254/1542/154/24
55/355/555/855/1757/357/557/6
wouldn't [4] 31/336/1554/1555/4
write [2] 10/1228/15
writes [1] 43/15
written [2] 19/2252/16
wrong [1] 27/15
wrote [3] 43/245/2350/24

**Y**

Yahoo [1] 14/8
YANEFSKI [5] 2/43/56/1028/16
30/12
Yano [1] 26/25
year [4] 12/743/243/2143/23
year [19] 5/87/1811/2414/2419/25
30/2320/2223/725/1126/432/736/9
36/1038/538/2040/255/1156/457/22
yesterday [2] 28/2130/25
yet [8] 22/1322/1522/1526/526/11
26/1828/1037/14
YORK [8] 1/11/182/32/72/72/11
40/1053/2
you [111]

**Y**

**you'll [3]** 27/1528/2330/20
**you're [18]** 8/915/517/424/1225/9
28/928/1430/630/1235/846/1747/9
47/948/1048/1349/1451/1451/15
**you've [5]** 22/1337/1240/249/18
49/21
**young [1]** 50/15
**your [76]**

**Z**

**zip [1]** 23/23

EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
K. DOE, et al.,

                           Plaintiffs,                          **ORDER**

        -against-                                          15 Civ. 7822 (CS)(PED)
                                                           15 Civ. 7827 (CS)(PED)
KURT LUDWIGSEN, et al.,

                           Defendants.
-----------------------------------------------------X

        On or about October 26, 2017, plaintiffs' counsel caused to be issued a subpoena ad
testificandum and duces tecum, addressed to Brittany Sturtevant ("Ms. Sturtevant"), a.k.a. Allie
Haze (the "Subpoena"). The Subpoena called for her deposition on December 18, 2017, in Las
Vegas, Nevada, where she resides.  Ms. Sturtevant was served with the Subpoena on or about
November 2, 2017.

        Presently before this Court is plaintiffs' motion to compel Ms. Sturtevant's compliance
with the Subpoena (15 Civ. 7827, Dkt. #112).[1]  Specifically, plaintiffs seek an Order compelling
Ms. Sturtevant's videotaped deposition on April 30, 2018, at the Reisman Sorokas law office, in
Las Vegas, Nevada, and, compelling production of all responsive documents to the subpoena by
5 P.M. on April 16, 2018.

        This Court adheres to its previously-expressed view that, pursuant to Rule 45 of the
Federal Rules of Civil Procedure, the motion **must** be filed in the district where compliance is
required (the United States District Court, District of Nevada–Las Vegas).

        Accordingly, because this Court lacks jurisdiction under FRCP 45 to enforce the
Subpoena (absent transfer of the motion to this Court from the District Court of Nevada pursuant
to Rule 45(f)), plaintiffs' motion is **DENIED WITHOUT PREJUDICE**.


Dated: March 8, 2018                    **SO ORDERED.**
       White Plains, New York

                                        PAUL E. DAVISON, U.S.M.J.

---

[1]  The motion was not filed under the designated lead case, 15 Civ. 7822 (CS)(PED).